**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frederick Leon DOTSON,
Defendant-Appellant.**

No. 85–4951.

United States Court of Appeals,
Fifth Circuit.

Sept. 9, 1986.

Robert Glass, New Orleans, La., for defendant-appellant.

Glen H. Davidson and Robert O. Whitwell, U.S. Attys., and John R. Hailman, Asst. U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before CLARK, Chief Judge, RUBIN, and GARZA, Circuit Judges.

CLARK, Chief Judge:

Appellant Leon Frederick Dotson appeals his conviction on three counts of receiving firearms in violation of 18 U.S.C. §§ 922(h) and 922(a). Finding that the district court erred in allowing government agents to testify as to their opinions of the truth and veracity of Dotson and Dotson's witnesses without offering an adequate predicate upon which they based their opinions, we reverse.

### I.

Dotson was convicted in 1977 and 1978 of state and federal felonies for the possession of marijuana. In 1982 he was released from federal detention and placed on parole. As a result of his status as a convicted felon on parole, federal law prohibited Dotson from knowingly receiving firearms. 18 U.S.C. § 922(h).[1]

The three handguns that were the subject of the charges against Dotson included a Colt .38 revolver, a Colt .45 pistol, and a .9 mm Walther pistol. As part of his defense of necessity, Dotson took the stand himself and called various witnesses to explain how and why he had obtained the handguns.

The essence of Dotson's defense is his contention that he was faced with serious and repeated threats to his physical safety shortly after his release and return home. On one occasion, an Officer Charles Kirk of the Greenville, Mississippi police was called to investigate an alleged attack in which 30 bullets were fired into Dotson's house. Kirk testified at trial that he advised Dotson to obtain a weapon for protection.

Dotson testified that he had purchased the Colt .38 before his earlier convictions, and that he had left the handgun with others during his incarceration and before the attack. He testified that, after his talk with Kirk, he reclaimed the weapon for his protection. Both Dotson and his mother, Erma Dotson, testified that he had received the Colt .45 as part of his father's estate. Finally, both Dotson and his friend, Reginald Owens, testified that the .9 mm Walther was obtained in pawn for a gambling loan, and that Owens had kept the pistol until Dotson needed it for his protection. In addition, Dotson's girlfriend, Crystal Johnson, offered testimony corroborating Dotson's version of how he acquired the handguns; her testimony also bolstered Dotson's claims of serious threats, as did the testimony of Kirk, Owens, and Erma Dotson.

As part of its rebuttal to Dotson's defense of necessity, the government called four government agents to testify that, in their opinion, Dotson and one or more of his witnesses were not of truthful character and not to be believed under oath.

---

1. It shall be unlawful for any person—

    (1) who ... has been convicted in any court of [ ] a crime punishable by imprisonment for a term exceeding one year ...

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. 18 U.S.C. § 922(h).

The government first called FBI agent John Canale, who testified as follows:

Q. Have you had occasion to conduct an investigation into the activities of the defendant, Fred Dotson, and his associates?

A. Yes, sir, I have.

Q. As a result of this investigation and what you have learned and all that you have seen in this case, have you formed an opinion as to the truthfulness of the defendant, Frederick Leon Dotson?

A. Yes, sir, I have.

Q. Is that opinion of his truthfulness good or bad?

A. Bad.

Q. Would you believe Frederick Leon Dotson under oath?

A. No, sir, I would not.

The prosecutor then asked Canale the same questions with regard to Dotson's girlfriend, Crystal Johnson. After Canale stated his opinion, defense counsel objected as follows:

If the court please, I object to that your honor. I don't believe that an adequate predicate has been laid. He knows her and general reputation in the community that he lives—

The court interrupted at this point and overruled the objection.

Thereupon the prosecutor proceeded in similar fashion to elicit opinions from Canale as to Owens and Kirk. Three more government agents were called—another FBI agent, a state narcotics agent, and an Internal Revenue Services agent—to offer their opinions on the truthfulness of Dotson and his witnesses. The form of questioning and the opinions elicited did not differ materially from the example offered above, with two exceptions. The Mississippi narcotics agent testified that she had known Dotson for six or seven years and Owens "[w]ithin the last year"; otherwise, she also based her opinion of Dotson, Owens and two more of his witnesses on her investigation of this case. The IRS agent limited his opinion testimony to the truthfulness of Erma Dotson, whom he had investigated on a separate occasion.

The jury returned verdicts of guilty on all three counts of receiving firearms. Dotson was convicted and sentenced to a total of five years.

On appeal, Dotson challenges the admission of the government agents' opinion testimony based solely on their conduct of an investigation. He also challenges the admission of circumstantial evidence offered by the government to rebut his defense of necessity by showing that Dotson's drug dealing activities created the danger that Dotson asserts.

II.

Federal Rule of Evidence 608(a) reads in relevant part:

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation ... for truthfulness or untruthfulness....

Prior to the adoption of Rule 608(a), there had been confusion and conflict among courts and commentators as to the propriety of offering opinion evidence to impeach the credibility of a witness. *See* McCormick, Evidence § 44, at 90–93 (2d ed. 1972); 7 Wigmore, Evidence §§ 1981–1986 (Chadbourn rev. 1978); Ladd, *Techniques of Character Testimony*, 24 Iowa L.Rev. 498, 509–13 (1939). It had been common practice for counsel to ask witnesses whether, based upon their knowledge of the principal witness's reputation in the community for truth and veracity, they would believe him under oath. *See United States v. Walker*, 313 F.2d 236, 239–41 (6th Cir.), *cert. denied*, 374 U.S. 807, 83 S.Ct. 1695, 10 L.Ed.2d 1031 (1963). Recognizing that "witnesses who testify to reputation often seem in fact to be giving their opinions, disguised somewhat misleadingly as reputation," Advisory Committee's Note, Fed.R.Evid. 608(a), Rule 608(a) makes clear that witnesses may state their opinions directly.

In *United States v. Lollar*, 606 F.2d 587 (5th Cir.1979), a case in which a challenge

was made only to the impeachment of the defendant, this Circuit stated that Rule 608(a) imposes no requirement that "counsel first ask the impeaching witness about his knowledge of the defendant's reputation for truth and veracity, and whether based on that knowledge he would believe the defendant under oath...." *Id.* at 589. The *Lollar* decision quotes Judge Weinstein at length:

> [w]itnesses may now be asked directly to state their opinion of the principal witness's character for truthfulness and they may answer for example, "I think X is a liar." The rule imposes no prerequisite conditioned upon long acquaintance or recent information about the witness....

*Id.* (citing 3 Weinstein's Evidence ¶ 608[04], at 608–20 (1978)).

In the case before us on review, Dotson does not challenge the form of the evidence at issue. Rather he asserts that there are limits to the introduction of opinion testimony. In particular, he refers to Federal Rules of Evidence 403 and 701, which operate to exclude opinions (1) whose probative value is outweighed by the danger of confusion and prejudice and (2) that are not helpful to the trier of fact.

■ Federal Rule of Evidence 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." We do not decide here whether or not such considerations may be sufficient to exclude the impeachment testimony of government agents in certain cases. No objection was made which required a Rule 403 balancing. *See United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). We therefore decline to address this issue on appeal.

Dotson's trial counsel did at one point object to the introduction of the opinion testimony. Although the objection was phrased in very general terms—"I don't believe an adequate predicate has been laid"—we deem this sufficient, in view of the court's interruption, to put the trial judge on notice that defense counsel objected to the lack of a basis upon which the opinions of the government witnesses were stated.

Although Rule 608(a) clarifies the older, more confusing approach to eliciting an impeaching witness's opinion, we do not construe it to abandon all limits on the reliability and relevance of opinion evidence. Judge Weinstein, in explaining Rule 608(a)'s liberalized approach (which *Lollar* quotes above) qualifies the admissibility of such testimony thus: "If the court finds the witness lacks sufficient information to have formed a reliable opinion, [the judge] can exclude relying on Rules 403 and 602." 3 Weinstein's Evidence ¶ 608[04], at 608–20 (1985). In addition, Rule 701 explicitly limits opinion evidence:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of ... the determination of a fact in issue.

The Rule 701(a) limitation is characterized by the committee as the "familiar requirement of first-hand knowledge or observation," Advisory Committee's Note, Fed.R.Evid. 701(a).[2] The second limitation, (b), requires that opinion testimony be helpful in resolving issues. The Advisory Committee warns that "[i]f ... attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule." Advisory Committee's Note, Fed.R.Evid. 701(b).

■ An opinion, or indeed any form of testimony, without the underlying facts,

---

**2.** The requirement of "first-hand knowledge" is initially embodied in Federal Rule of Evidence 602: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."

may be excluded if it amounts to no more than a conclusory observation. *See United States v. Phillips*, 600 F.2d 535, 538–39 (5th Cir.1979). In *Phillips*, this Circuit observed that a witness's testimony that the defendant in a social security fraud case understood "the meaning of disability" (which would supply the "intent" element of the fraud charged), absent the underlying facts upon which the witness based her conclusion, may have constituted inadmissible evidence under Rule 701. The court opined that the testimony " 'amount[ed] to little more than choosing up sides' on an ultimate issue of fact." Id. at 538.

The only basis offered by three of the four government agents who testified at Dotson's trial that Dotson and his witnesses were not to be believed under oath was the fact that they took part in a criminal investigation of Dotson. The two FBI agents merely stated that they had taken part in an investigation of Dotson. No other testimony was elicited with respect to how long the agents had known Dotson, or in what way they had acted to form their opinions of his veracity. Each agent offered his opinion of not only Dotson's character for truthfulness, but also the veracity of his girlfriend Johnson, his friend Owens, and Officer Kirk. The state narcotics agent stated that she had known Dotson for six or seven years and had gotten to know Owens within the last year. No further basis for opinion was offered outside of the fact that she took part in an investigation. She also testified as to the character of Johnson and Kirk. On the other hand, IRS agent Alvin Patton's testimony on the truthfulness of Erma Dotson did in fact evidence a sufficient basis. For example, Patton stated that he interviewed Erma Dotson four times, that he investigated her tax returns and financial information, and that he studied her testimony before the grand jury. He also limited his opinion to Erma Dotson's truthfulness with respect to the financial aspects of her son's case. Patton was entitled to express his opinion that Erma Dotson was not to be believed under oath. Of all the agents who testified, only Patton provided a predicate

upon which the court could have determined that the opinion was reliable and helpful.

■ In the absence of some underlying basis to demonstrate that the opinions were more than bare assertions that the defendant and his witnesses were persons not to be believed, the opinion evidence should not have been admitted.

When and by whom the basis for such opinion must be developed is a question initially committed to the sound discretion of the trial court. That court has the responsibility for determining the order of proof, but the determination should be made deliberately and in the exercise of a considered discretion. Here, no account was taken of the value to the jury of the opinion expressed or of the possible prejudice to the defendant from the brusque branding of his testimony as lies. The record should reflect some indication that the court did not merely let down the bars to the expression of any opinions the prosecutor's witnesses wanted to voice.

As Judge Weinstein has noted, cross examination is available to test opinions. 3 Weinstein's Evidence ¶ 608[04], at 608–20 (1985). In some cases, cross-examination may suffice to protect a defendant who raises no objection to an opinion witness's testimony. Where, however, the defendant in a criminal case objects to the lack of a basis for a government agent's unsupported assertion that the defendant and his witnesses are unworthy of belief, the court should require that the witness identify the basis or source of the opinion. Unless that basis or source demonstrates that the opinion is rationally based on the perception of the witness and would be helpful to the jury in determining the fact of credibility, it should not become a part of the proof in the case.

■ We do not hold that government agents may never testify as to the truthfulness of a defendant or defense witnesses. Nor do we hold that a government agent's opinion of a witness's character may never be based exclusively on what the agent

learned on an official investigation. But the fact that one has conducted an investigation of the defendant, has known the defendant, or has had minimal contact with defendant's witnesses is not a sufficiently reliable basis under Rules 608(a) and 701 for that witness, over objection, to put before the jury the opinion that they are liars.

The vice of this procedure was heightened in the case at bar by the use made of the opinions. The prosecutor, in closing argument, referred to this opinion testimony in the following manner:

> Another fact that you can consider is what the people, the good solid people in this community; narcotics officers, police officers, the FBI, what they think about [the defendant] and his associates. His associates, such as—if you believe his defense, you have to believe Reginald Owens, Frederick Dotson, Frederick Dotson's latest girlfriend.

If this is permitted, the government's agents and attorney could move from presenting factual proof of incrimination to suggesting to the jury that the "good people" of the community ought to put the "bad people" behind bars. This is but a variation on the theme of attempts to convict, not for the criminal act charged, but by showing the defendant to be a "bad person" through proof about other crimes. *See* McCormick, Evidence, § 43, at 89–90 (2d ed. 1972). A prosecutor errs if he goes outside the record to express a personal opinion to the jury that the defendant's testimony is incredible. If his witnesses may state such opinions without providing basis in fact, and the prosecutor sums them up as fact, the same vice inheres.

The government observes that the agents who testified were not technically "case agents" in the case for which Dotson was on trial. This is not determinative. As we stated above, we do not hold that government agents may not ever express opinion about witnesses in their cases. They may do so on the same basis as any other witness. Indeed, we hold that admitting Patton's testimony was not error. The error as to the others lay in admitting, over objection, opinion proof without predicate facts showing its reliability and helpfulness. With the exception of Patton's testimony, the admission of the investigators' opinions was reversible error.

### III.

■ Dotson's contention that the government improperly insinuated that his drug dealings had placed him in a situation of danger in order to negate his defense of necessity is without merit. Dotson's necessity defense and the evidence he offered in support of the defense made the facts of his drug-related activities relevant. The district court had discretion to control the scope of rebuttal evidence. *Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976); *United States v. Renfro*, 620 F.2d 497, 502 (5th Cir.), *cert. denied*, 449 U.S. 921, 101 S.Ct. 321, 66 L.Ed.2d 149 (1980). No abuse of that discretion resulted from allowing government counsel to pursue this theory of the case in cross-examination and argument.

Because the testimony of the government agents should not have been admitted absent evidence of the underlying facts upon which it was based, the judgment of conviction is

REVERSED.