985 F.2d 571
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
AVEL PTY. LTD., dba General Vending Company, dba Leisure and
Allied Industries, a Foreign Corporation,
Plaintiff-Counter-Claim-Defendant-Appellant,
v.
Shane BREAKS, an individual; Hide Nakajima, an individual,
Defendants-Appellees,
and
Atari Games Corporation, Defendant-Counter-Plaintiff-Appellee.
 No. 90-16473.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 11, 1992.
Decided Jan. 21, 1993.
 
 Before ALARCON, CYNTHIA HOLCOMB HALL and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Avel Pty. Ltd. (Avel) appeals from the judgment entered following trial by jury in favor of Atari Games Corporation (Atari), Hide Nakajima, and Shane Breaks in this diversity action. The litigation arose out of Avel's claim that Atari had agreed that Avel would be the exclusive distributor of Atari video games in Australia.
 
 
 3
 Avel contends that the district court abused its discretion by refusing to allow Avel to introduce opinion testimony relating to the untruthfulness of Atari's key witness. We conclude that the district court did not abuse its discretion in denying admission because Avel failed to make an offer of proof of facts that would support the witnesses' opinion. Avel also asserts that the district court erred in directing a verdict on Avel's claim for bad faith denial of the existence of a contract. We reject this contention because Avel failed to present any evidence that Atari was guilty of oppression, fraud or malice. Finally, Avel argues that the district court's supplemental jury instruction on contract formation was erroneous and prejudicial. We conclude that the district court's supplemental instruction was responsive to the juror's questions and did not misstate California law.
 
 FACTS
 
 4
 Avel is an Australian distributor of video games. Atari manufactures video games and video game products. For several years prior to 1988, Avel and Atari had entered into distribution contracts for individual Atari games.
 
 
 5
 On December 29, 1987, Malcolm Steinberg, Avel's managing director, wrote a letter to Shane Breaks, the international vice president of sales for Atari. Steinberg proposed that Avel be the exclusive distributor of Atari products in Australia. In a reply letter, Breaks stated that Steinberg's proposal was "totally unacceptable" to Atari.
 
 
 6
 On January 13, 1988, Steinberg and Breaks met at a trade show in London, England. Avel alleges that Breaks orally agreed that Steinberg would be the exclusive distributor of Atari games in Australia. According to Avel, the alleged agreement provided that Atari would offer new video games to Avel before offering them to another distributor. Steinberg testified that the parties agreed that if Avel purchased a sufficient number of a new video game, it would become the exclusive Australian distributor for that game.
 
 
 7
 On January 16, 1988, Steinberg sent a letter by fax to Hide Nakajima, the president of Atari, and Breaks. The fax contained Steinberg's version of the agreement allegedly concurred in by all parties on January 13, 1988. No Atari employee replied to this fax. Nakajima testified that he did not see the fax letter until early February. Breaks testified that he did not see the document until late February.
 
 
 8
 This action was initially filed in the United States District Court for the Central District of California on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(2). Section 1332(a)(2) provides for federal jurisdiction in cases involving citizens of foreign states and citizens of the United States. Avel was a company incorporated in the state of Western Australia. Atari was incorporated in Delaware. The parties later stipulated to transfer the action to the United States District Court for the Northern District of California because Atari had its principal place of business in Santa Clara County.
 
 
 9
 On March 8, 1990, the parties stipulated to waive their right to have their action tried by a district court judge. Pursuant to 28 U.S.C. § 636(c), they agreed to proceed before a United States magistrate judge.
 
 DISCUSSION
 
 10
 I. Opinion Testimony On Untruthfulness of Witness.
 
 
 11
 Avel contends that it was prejudiced by the suppression of opinion testimony regarding Shane Breaks' character for untruthfulness based on Avel's failure to lay a proper foundation. Although other circuits have confronted the question, this circuit has not previously been called upon to determine what foundation is required for the admission of opinion testimony regarding the character of a witness for truthfulness or untruthfulness pursuant to Rule 608(a) of the Federal Rules of Evidence. See United States v. Cortez, 935 F.2d 135 (8th Cir.1991), cert. denied, 112 S.Ct. 945 (1992); United States v. Dotson, 799 F.2d 189 (5th Cir.1986); United States v. Watson, 669 F.2d 1374 (11th Cir.1982).
 
 
 12
 Here we need not determine whether the judge erred by requiring more foundation in personal knowledge than was necessary for the witnesses to offer their opinions on Breaks' business honesty. The trial judge exercised her discretion to exclude the testimony that former business associates thought Breaks was dishonest and inclined to renege on contracts because "I don't think that sort of testimony is useful to a jury and I think it's a waste of time and is a lot of collateral evidence." Although the testimony was perhaps admissible opinion evidence, it was excludible in the discretion of the trial judge for two of the reasons she gave--needless consumption of time (Rule 611(a)(2)), and lack of helpfulness to a determination of a fact in issue (Rule 701). This is especially so considering the risk that the value of the testimony in helping the jury evaluate the truthfulness of Breaks' testimony would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and waste of time (Rule 403). We see no abuse of discretion.
 
 
 13
 II. Directed Verdict on Bad Faith Denial and Punitive Damages.
 
 
 14
 Avel contends that the district court erred in granting Atari's motion for a directed verdict on the bad-faith denial of the existence of a contract claim. The district court directed the verdict after Avel's counsel admitted that only punitive damages were attributable to the bad-faith claim. Avel cannot show that the entry of the directed verdict was erroneous unless it can demonstrate that the district court improperly removed the punitive damages issue from the jury's consideration.
 
 
 15
 California Civil Code section 3294 provides that a plaintiff cannot recover punitive damages unless he or she can prove by clear and convincing evidence that a defendant was guilty of "oppression, fraud, or malice."[1] Viewed in the light most favorable to Avel, the evidence shows that the parties entered into an oral contract on January 13, 1988. Atari's witnesses denied that an agreement was reached. The mere denial that an agreement was reached does not demonstrate that Atari was guilty of oppression, fraud, or malice. Otherwise, punitive damages would be available in every contract action where the defendant denies the existence of an agreement. Avel's reading of section 3294 is contrary to its plain meaning. "Something more than the mere commission of a tort is always required for punitive damages." Mock v. Michigan Millers Mut. Ins. Co., 4 Cal.App. 4th 306, 328, 5 Cal.Rptr.2d 594, 607 (Cal.Ct.App.1992) (internal quotations omitted).
 
 
 16
 III. Jury Instruction on Contract Formation.
 
 
 17
 Avel asserts that the district court gave an erroneous supplemental instruction in response to the jury's questions regarding contract formation. Before deliberations, the district court gave the jury the following instruction regarding contract formation:
 
 
 18
 In determining whether there was a contract, keep the following rules in mind: A contract is an agreement between parties that each will do a certain thing. A contract may be formed in any manner sufficient to show a meeting of the minds of the parties, including conduct by both parties that recognizes the existence of an agreement.
 
 
 19
 Neither party objected to this instruction.
 
 
 20
 During deliberations, the jury sent the district court a note expressing its confusion over the issue of contract formation:
 
 
 21
 As per your written page 7, lines 7 through 9: "A contract may be formed in any manner sufficient to show a meeting of the minds of the parties, including contact [sic] by both parties that recognizes the existence of an agreement. Question: If California Commercial Code Section 2201 applies to written docum [sic] and isn't denied within ten days, they have an enforceable contract. Would this also apply to a de facto "meeting of the minds." If not responded to within ten days, do we assume they have a meeting of the minds and therefore a contract. Question: If S. Breaks heard M. Steinberg mention items number 4, 7 through 9 of Exhibit 11 at London meeting, but didn't respond, is it still considered a "meeting of the minds?"
 
 
 22
 After receiving this note, the district court remarked that the jury appeared to be confused. The court and counsel discussed an appropriate reply to the jury's note. Avel's counsel requested that the court instruct the jury that:
 
 
 23
 The actions, statements, and conduct of the parties both before and after the alleged formation of the contract on January 13, 1988 may be considered by you to help decide whether a contract was actually agreed to on that date.
 
 
 24
 In response, the district court stated that Avel's proposed supplemental instruction did not address the jury's concern regarding what happened at the London meeting. The court commented that it was afraid that Avel's proposed supplemental instruction would "confuse them more by going into things before and after."
 
 
 25
 The court gave the jury the following supplemental instruction:
 
 
 26
 [B]efore you consider the question of whether there was a confirming writing that wasn't responded to, you must first find that an agreement between the parties existed; whether by express statements of agreement by both sides at the meeting, or by conduct of the parties at the meeting that was intended to and did indicate agreement to the other side.
 
 
 27
 Avel contends that this instruction is erroneous because it did not instruct the jury to consider events occurring before and after the meeting, and therefore erroneously adopted the subjective theory of contracts. We apply state law to determine the substantive content of jury instructions in diversity cases. In re Hawaii Fed. Asbestos Cases, 960 F.2d 806, 814 (9th Cir.1992). The instructions, considered as a whole, must correctly cover the applicable law and allow the jury to determine intelligently the issues presented. Id.; Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 978 (9th Cir.1987).
 
 
 28
 In order to form a contract, both parties must express their mutual assent by outward manifestations of consent which would lead a reasonable person to believe that the parties had reached an agreement. See, e.g., 1 B.E. Witkin, Summary of California Law § 119 (9th ed. 1987 & Supp1992); Brant v. California Dairies, 4 Cal.2d 128, 133, 48 P.2d 13, 16 (1935). A party's undisclosed intention does not determine whether a valid contract has been formed. Brant, 4 Cal.2d at 133.
 
 
 29
 The district court's supplemental instruction did not adopt the subjective theory of contracts. The earlier instructions informed the jury that a "meeting of the minds" must be proved. The district court properly focused its statement on the concerns expressed in the jury note. It instructed the jury to consider the parties' statements and conduct at the London meeting to determine whether they had reached an agreement on January 13, 1988. If the parties did not agree to a contract at the London meeting, the subsequent events would be irrelevant in determining whether a valid contract was formed. Although subsequent events might assist the jury in determining whether Steinberg or Breaks presented a more credible version of the facts, such events would not be directly probative of whether the parties indicated their mutual assent to an exclusive distribution agreement at the London meeting. The jury instructions, when viewed as a whole, correctly instructed the jury on the applicable law.
 
 
 30
 AFFIRMED.
 
 CYNTHIA HOLCOMB HALL, dissenting:
 
 31
 I disagree with Part I of the majority opinion, and therefore respectfully dissent. I would reverse the district court's judgment on the ground that the district court abused its discretion by excluding all of Avel's proposed opinion testimony regarding the purported untruthfulness of Shane Breaks, Atari's key witness. The magistrate judge could have properly exercised her discretion by limiting the number of opinion witnesses or the amount of time for their testimony, but did neither.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Section 3294 provides the following definitions:
 (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
 (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
 (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.
 Cal. [Civ.] Code § 3294 (Deering & Supp.1992).