2 F.3d 1150
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Harold D. HOUSE, Defendant-Appellant.
 No. 92-5349.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 2, 1993.
Decided: August 5, 1993.
 
 1
 Appeal from the United States District Court for the District of South Carolina, at Aiken. Solomon Blatt, Jr., Senior District Judge. (CR-90-454)
 
 
 2
 Argued: Richard E. Miley, Attorney at Law, P.A., North Augusta, South Carolina, for Appellant.
 
 
 3
 Dean A. Eichelberger, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 
 
 4
 On Brief: John S. Simmons, United States Attorney, David J. Slattery, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 
 
 5
 E.D.Va.
 
 
 6
 AFFIRMED.
 
 
 7
 Before HALL and LUTTIG, Circuit Judges, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 OPINION
 HILTON, District Judge:
 
 8
 Harold D. House appeals from a sentence imposed by the United States District Court for the District of South Carolina. Subject matter jurisdiction in the district court was based on 18 U.S.C. §§ 1344(a)(1) and 1344(a)(2). Appellate jurisdiction is based on 28 U.S.C. § 1291.
 
 
 9
 A grand jury indicted Defendant Harold D. House in a two-count indictment. Count I charged him with bank fraud, in violation of 18 U.S.C. § 1344, for allegedly making false representations to Aiken County National Bank that two individuals were guarantying a corporate loan, when both of the signatures had been"forged." In Count II, the government charged defendant with a violation of 18 U.S.C. § 1014, alleging that Mr. House had willfully overvalued collateral pledged to the bank. At the conclusion of the trial, the jury found Mr. House guilty on Count I but acquitted him on the second count. We affirm.
 
 
 10
 Appellant was the largest of several shareholders of Med-Trade International (MTI), and served as its president and director. The business of MTI related to efforts to develop and market medical technologies. In the summer and fall of 1988, MTI actively pursued a stock offering of shares of a subsidiary corporation, SCT, Inc., to raise funds to market a skin cholesterol test. MTI retained Atlantic Securities and Investments, Inc. (ASI) to prepare the stock offering; ASI's president was Mr. William Blalock.
 
 
 11
 In September of 1988, Mr. Blalock wrote to Aiken County National Bank recommending that it make a loan of $150,000.00 to MTI to assist in the cost of the public offering of SCT stock. Soon thereafter, the bank's president, Mr. Wade Brodie, received financial information from MTI's financial officer, Ms. Nancy Mosley Weber. Mr. Brodie testified that a Mr. Parrott of the bank prepared the bank's documents for the loan, including the $150,000.00 note and guaranty. Mr. Brodie further testified that a meeting was held at his office, attended by both Mr. and Mrs. House, and Mrs. Mosley Weber. Mr. and Mrs. House signed the note, the guaranty form and other internal bank documents. The guaranty and a corporate resolution form were given to either Mrs. House or Mrs. Mosley Weber to secure the signatures of the other corporate directors-Mr. Harry Inman and Mr. Walter O'Connell. Mr. Brodie testified that by October 28, 1988, the bank had advanced $149,600.00 on the loan.
 
 
 12
 In early November of 1988, Mr. Brodie received information that the signatures of Mr. Inman and Mr. O'Connell on the guaranty form were forged. He confronted appellant on November 22, 1988, and obtained an affidavit from Mr. House stating that he had signed Mr. Inman's and Mr. O'Connell's names by mistake. Accompanying this affidavit was other documentation pledging various items of collateral to secure the loan.
 
 
 13
 Both Mr. Inman and Mr. O'Connell submitted affidavits denying both that they had signed the guaranty and had authorized anyone to do so on their behalf. At trial, Mr. Joseph Bowers, an expert FBI documents examiner, testified that in his opinion, Harold House authored Walter O'Connell's signature on the guaranty form.
 
 
 14
 Mr. William Blalock testified at trial that his firm, ASI, was hired to raise $3 million for SCT, the subsidiary of MTI. However, ASI was not successful in marketing SCT shares of stock or raising the $3 million. Mr. Blalock had no investment or shares in SCT or MTI but Mr. House did provide him with shares in Worldwide Medical Technology (WWMT), a company separate and distinct from MTI and which was unrelated to obtaining the MTI loan. On cross-examination, Blalock admitted that Mr. House had provided him with 500,000 shares of WWMT, and that these shares were the subject matter of a continuing law suit between him and Mr. House. Mr. Blalock also identified a copy of the Master's Report prepared in the state court suit. The Government objected to the report on the grounds of relevance, and the court delayed a ruling.
 
 
 15
 Later in the day, the court heard argument on the objection, and, while it ruled the Master's Report inadmissible, it ruled that both Mr.
 
 
 16
 Blalock and Mr. House could testify concerning the existence of the state court law suit and the result reached by the magistrate. Further, the court directed the Government to have Mr. Blalock in court the following morning for cross-examination regarding the state law suit, and stated that Mr. House could use the Master's Report to cross-examine Mr. Blalock, but could not introduce it into evidence. When later recalled to testify, Mr. Blalock admitted that he had been sued by Mr. House because of the WWMT stock, and that he was disappointed in him because of the suit, yet the outcome of the suit was not final. Counsel was not permitted to go into the details of the Master's Report. Appellant House also testified on direct examination concerning the stock he provided to Blalock, claiming that Mr. Blalock "stole" over $300,000.00 worth of it, and that he had sued Blalock in the South Carolina Court of Common Pleas.
 
 
 17
 Ms. Nancy Mosley Weber testified that she was employed by Mr. House at MTI from May to November of 1988 as Director of Financial Affairs, and that she worked directly for Mr. and Mrs. House. She was aware of the $150,000.00 loan and helped Mr. and Mrs. House assemble the information and paperwork for the loan. She stated that she was present in Ms. Deborah House's office at MTI when the guaranty was signed by Mr. and Mrs. House. They told her that Mr. Inman and Mr. O'Connell were out of town, and since they were not available to sign the guaranty, they would sign for Mr. O'Connell; Mr. Inman would be back in town the next day. Ms. Mosley Weber also stated that before the guaranty was signed, she saw both Mr. and Mrs. House practice writing the signatures of Mr. Inman and Mr. O'Connell.
 
 
 18
 Mr. House asserts on appeal that the district court erred in: (1) excluding evidence of a certified copy of a Master's Report in the matter of House v. Blalock and Atlanta Securities, Civil Action No. 89-CP-02-981 (Aiken Cty. Ct. of Common Pleas 1990), and testimony as to judgment therein; (2) sustaining the Government's objection to questions by Defendant House to his witness, Janice Houerwas regarding the credibility of a prosecution witness; and, (3) refusing to charge the jury, as requested by the defendant, that proof of some contemplated or intended harm or injury was necessary for a finding of fraudulent intent.
 
 I.
 
 19
 This court finds that the district court was correct in finding that the Master's Report was inadmissible. Under Rule 403 of the Federal Rules of Evidence, the district court has broad discretion to exclude evidence on the ground that its probative value is strongly outweighed by the danger of undue prejudice, confusion of the issues, that it is misleading, for undue delay, and for other reasons. This discretion will be disturbed only after it has been clearly abused, or if the district court has acted arbitrarily and capriciously. United States v. Layton, 767 F.2d 549 (9th Cir. 1985).
 
 
 20
 The admission of the Master's Report was relevant only concerning the possible bias of Mr. Blalock. The district court correctly pointed out that the Master's Report referred to a dispute over shares of stock in WWMT, which had nothing to do with Count I of the criminal litigation before the district court-forgery on the loan guaranty. Clearly, Mr. Blalock's shares of stock in WWMT played no role in the negotiations for the loan between the Mr. and Mrs. House and the Aiken County Bank officers, and it in no way affected the matter of forgery of signatures on the loan guaranty form, of which Mr. House was ultimately found guilty in the lower court. Further, admission of the Master's Report, which was otherwise irrelevant, was also unnecessary to show Mr. Blalock's potential bias, since Mr. House was given ample opportunity to show the potential bias of Mr. Blalock through his own testimony, and through the cross-examination of Mr. Blalock.
 
 II.
 
 21
 The district court also correctly refused to allow appellant to impeach a government witness by making defense lay a proper foundation before allowing defense witness, MTI employee Ms. Janet Houerwas, testify as to the believability of government's witness, Ms. Mosley Weber.
 
 
 22
 Ms. Mosley Weber at trial testified that she saw Mr. and Mrs. House sign the names of Mr. Inman and Mr. O'Connell, and that prior to the signing, she witnessed them practicing the signatures. Mr. and Mrs. House testified that they thought they were signing a corporate resolution.
 
 
 23
 To impeach Ms. Mosley Weber, the defense called Ms. Sara Harmon, a classmate of Ms. Weber; Ms. Donna Johnson, an employee of MTI; and Ms. Janet Houerwas, also an employee at MTI. Ms. Johnson stated that she would not believe Ms. Mosley Weber under oath. When Defendant House asked Ms. Houerwas whether she would believe Ms. Mosley Weber under oath, the government objected for failure to lay a proper foundation. The court sustained the objection, and the defendant appeals.
 
 
 24
 This court agrees with the district court that before a person can express an opinion on a matter, it is necessary to lay a foundation to show that the person has personal knowledge and information on hand to express an opinion. See United States v. Dotson, 799 F.2d 189 (5th Cir. 1986).
 
 
 25
 This court also agrees with the lower court that any testimony from Ms. Houerwas regarding Ms. Weber's reputation for truthfulness would have been cumulative, for other witnesses had already testified at length that Ms. Weber had a bad reputation for truthfulness, held animosity towards the Houses, had stolen property, and had over-paid herself. If any ruling regarding additional testimony from Ms. Houerwas was indeed in error, we find it was harmless error not warranting reversal. See Chapman v. California, 386 U.S. 18 (1967).
 
 III.
 
 26
 Lastly, the appellant asserts that the district court did not correctly charge the jury regarding fraudulent intent. Appellant requested that the district court state:
 
 
 27
 Although the government is not required to prove an actual injury, it must at a minimum, prove that Defendant Harold D. House contemplated or intended some actual harm or injury to the bank. Only a showing of intended harm will satisfy the element of fraudulent intent.
 
 
 28
 The district court refused to give this request verbatim as it believed it had adequately instructed both that Mr. House had to intend to defraud the Aiken County Bank and that his acts had to be done with intent to violate the law. From the record below, we find that the district court clearly and completely charged the jury with both the elements of the crime and the requisite intent. The district court defined "willfully" in regard to "willful intent," and then, in detail, explained a "scheme and artifice to defraud," "fraudulent intent," and "intent to harm." The court clearly instructed that jury that the defendant had to know that the guaranty submitted to the bank was forged, and that he submitted the forged guaranty with the intent that the bank rely on the forged document in deciding to make the loan in question.
 
 
 29
 Further, the court stated that fraudulent intent includes "bad faith," that the commission of an honest mistake is not fraudulent intent, and that good faith belief in the correctness of one's acts, or absence of bad intent, are defenses to the charge of bank fraud. These instructions, read as a whole, clearly show the jury that the defendant had to submit a forged document to the bank, with the intent that the bank rely on that document to make the loan, knowing at the time it was submitted that the bank was relying on a worthless guaranty to make the loan. The "intent to defraud" element, as necessary in United States v. Celesia, 945 F.2d 756 (4th Cir. 1991), and United States v. Starr, 816 F.2d 94 (2d Cir. 1987), is more than adequately covered by these instructions.
 
 
 30
 For the foregoing reasons, the opinion of the district court is
 
 
 31
 AFFIRMED.