United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 26, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-41244

_____

UNITED STATES OF AMERICA

Plaintiff-Appellee

versus

FRANCISCO CABRERA GARZA

Defendant-Appellant

_____
Appeal from the United States District Court for
the Eastern District of Texas, Sherman Division

_____

Before JONES, Chief Judge, KING, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

On January 9, 2003, Appellant Francisco Garza was charged in one count of a multi-count, multi-defendant indictment with conspiracy to distribute or dispense, or possess with intent to distribute or dispense 3,4 methylenedioxy-methamphetamine ("MDMA" or "Ecstasy"), methamphetamine, cocaine, and gamma hydroxybutyrate ("GHB") in the Eastern District of Texas. A trial was held from July 13 - 18, 2003, and Garza was subsequently convicted of the conspiracy charge. On December 17, 2003, Garza was sentenced to

1

life imprisonment, a $5,000 fine, and five years of supervised release. Garza filed a motion for new trial, which was granted by the district court because a portion of the trial transcript was missing. After a second trial from July 6 - 9, 2004, Garza was again convicted of the conspiracy. In September 2004, Garza was sentenced to 360 months imprisonment, a $5,000 fine, and five years supervised release. Garza filed a timely notice of appeal. We affirm the conviction but vacate the sentence and remand for resentencing.

## ISSUES ON APPEAL

Garza raises three issues on appeal regarding his trial and sentencing. First, he claims that the district court abused its discretion in refusing to allow Michael Grimes, a former investigator for the United States Department of Justice Inspector General, to testify or present his report as to his opinion of the credibility of Dallas Police Officer Barry Ragsdale to whom Garza allegedly confessed involvement in the conspiracy. The district court found that Grimes lacked sufficient information to form a reliable opinion and that his report did not constitute a party admission. Second, Garza argues that the district court erred in not allowing him to present the testimony of Linda James, a full-time document examiner. Garza attempted to introduce Ms. James' testimony that the signatures of Kim Sanders acting as a witness to Garza's alleged confession and consent to search did not match

2

other known signatures of Sanders.  Ms. James used copies rather than original documents in forming her opinion, and did not produce a report of her findings for the prosecution.  The district court found that Ms. James' testimony would not be reliable and that exclusion of her testimony was appropriate under the discovery rules.  Third, Garza argues that his sentence was enhanced impermissibly by the district judge based on facts not found by a jury beyond a reasonable doubt.  According to Garza, because he committed his crime prior to *Booker*, he should be sentenced only according to the merits opinion and not the remedy portion of *Booker*.

## DISCUSSION

**I. Opinion Evidence Regarding the Truth of a Government Witness**

**A. Michael Grimes' opinion testimony**

The defense sought to introduce the testimony of Michael Grimes regarding his opinion of Officer Ragsdale's veracity in federal prosecutions, pursuant to Federal Rule of Evidence 608(a).[1] In 1998, Michael Grimes, then an investigator for the United States Department of Justice Inspector General, investigated Officer

---

[1] Fed.R.Evid. 608(a) states: "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion of reputation evidence or otherwise."

Ragsdale. The investigation was prompted by Assistant United States Attorney Colleen Murphy expressing concern over her belief that Officer Ragsdale made representations to her that a certain defendant had cooperated when, in fact, he had not done so.[2] During his investigation, Grimes interviewed several witnesses (defense attorneys, police officers, and prosecutors) regarding their impression of Ragsdale. Grimes also had a couple of conversations with Ragsdale, which led Grimes to believe that Ragsdale was not being truthful because of his hand and eye movements, and because Ragsdale was being too nice to Grimes. After the investigation, which lasted about two moths, Grimes formed the opinion that Ragsdale was deceptive. However, Grimes recommended that no prosecution be filed based on insufficient evidence. The district court would not permit Grimes to testify as to his opinion.

Questions concerning the admissibility of evidence are reviewed for an abuse of discretion.[3] Rule 608 allows witnesses to present their opinion regarding an individual's character for truthfulness and imposes no prerequisite conditioned upon long

---

[2] The defendant referred to here is not connected to the instant case.

[3] *United States v. Hicks*, 389 F.3d 514, 522 (5th Cir. 2004). If the Court finds an abuse of discretion, it considers any error under the harmless error doctrine, affirming the judgment unless the ruling affected a substantial right of the complaining party. *Hicks*, 389 F.3d at 524.

acquaintance. However, this Court held in *US v. Dotson* that Rule 608 does not "abandon all limits on the reliability and relevance of opinion evidence."[4]  Rather, if the court finds the witness lacks sufficient information to have formed a reliable opinion, the judge can exclude relying on Rules 403 and 602."[5]  Further, the Court also stated that the opinion witness' testimony must comply with Rule 701, which provides, "If the witness is not testifying as an expert, his testimony in the form of opinions of inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witnesses and (b) helpful to a clear understanding of [...] the determination of a fact in issue."[6]  Therefore, the *Dotson* Court concluded that "[a]n opinion, or indeed any form of testimony, without the underlying facts, may be excluded if it amounts to no more than a conclusory observation."[7]

In deciding whether to allow Grimes' testimony, the district court carefully considered whether the testimony would satisfy the requirements of Rule 608.  The record indicates that the district court repeatedly stated that it would allow such opinion testimony if a proper foundation was laid.  In order to adequately decide the

---

[4] 799 F.2d 189, 192 (5th Cir. 1986).

[5] *Id.*, citing, 3 Weinstein's Evidence §608[04], 608-20 (1985).

[6] *Id.*

[7] *Id.* at 192-3, citing, *United States v. Phillips*, 600 F.2d 535, 538-39 (5th Cir. 1979).

issue, the district court allowed Grimes to take the stand and be questioned by both sides out of the hearing of the jury. Following the direct examination, cross-examination, and re-direct of Mr. Grimes, the district court analyzed the present case in light of *Dotson*. The district court admitted that Grimes had gone further in his investigation than did the agents in *Dotson* whose testimony was excluded.[8] However, the district court also felt that Grimes' investigation had not gone so far as the investigation of the agent whose testimony was allowed in *Dotson*.[9] Ultimately, the district court found it to be a close question but concluded that an adequate foundation had not been laid for Mr. Grimes' opinion.

The district court did not abuse its discretion in excluding Grimes' opinion testimony. In coming to its decision, the district court applied the correct legal standard and analyzed the case in light of circuit precedent. As *Dotson* explains, the determination of whether a sufficient basis for opinion testimony has been demonstrated should be made by the trial court "deliberately and in

---

[8]   The Court in *Dotson* excluded the testimony of two FBI agents who wanted to give their opinions of a witnesses credibility, because the only basis for the agents' testimony was that they had taken part in a criminal investigation of the witness. 799 F.2d at 193.

[9]   The *Dotson* Court allowed the opinion testimony of one FBI agent because he had interviewed the witness four times, investigated her tax returns and financial information, and studied her Grand Jury testimony. *Id.*

the exercise of considered discretion."[1]  Here, the district court exercised sound consideration of Grimes' testimony.  Though it was a close call, the fact that the district court may not have been in error in admitting the testimony does not mean that the court abused its discretion in excluding the testimony.  In *Dotson*, this Court explained that it was not holding that "a government agent's opinion of a witness's character may never be based exclusively on what the agent learned on an official investigation."[2]  However, the *Dotson* Court also explained that "the fact that one has conducted an investigation of the defendant, has known the defendant, or has had minimal contact with the defendant's witness is not a sufficiently reliable basis under Rules 608(a) and 701 for that witness, over objection, to put before the jury that they are liars."[3]  Therefore, in the absence of a holding that directly decided whether testimony like Grimes' must be admitted, the district court used analogy to decide whether Grimes' opinion had a basis making it more than bare assertions.  It was not an abuse of discretion to come to the considered decision that there was not an adequate foundation for Grimes' opinion.

## B. Michael Grimes' Investigation Report

Garza also argues that it was error for the district court to

---

[1]  799 F.2d at 193.

[2]  *Id.*

[3]  *Id.* at 194.

exclude the report containing Grimes' opinion as a party admission. Again, questions concerning the admissibility of evidence are reviewed for an abuse of discretion.[4] According to Garza, the investigation report qualifies as an admissible party admission under Federal Rules of Evidence 801(d)(2)(B) and 801(d)(2)(D) because, when he prepared the report, Grimes was employed by the Department of Justice, the entity prosecuting Garza. In pertinent part, Rule 801(d)(2) provides that an admission by a party-opponent is not hearsay if:

> The statement is offered against a party and is...(B) a statement of which the party has manifested an adoption or belief in its truth, or...(D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

Garza's argument that the investigation report is admissible under Rule 801(d)(2)(B) fails because the prosecution has never manifested an adoption of belief in the truth of Grimes' report.

Though it is not as well-settled in this Circuit's precedent, Garza should also fail in his argument that the investigation report is admissible under 801(d)(2)(D). Garza argues that Grimes prepared his report during the course and scope of his employment while acting as a government agent. Therefore, according to Garza,

---

[4] *Hicks*, 389 F.3d at 522.

Grimes' report on Ragsdale is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D). However, other circuits have declined to extend Rule 801(d)(2)(D) to statements made by government agents, especially in criminal trials.[5]

In *U.S. v. Van Griffin*, the Ninth Circuit explained, "We do not say that every publication of every branch of government of the United States can be treated as a party admission by the United States under Fed.R.Evid. 801(d)(2)(D)."[6] In *U.S. v. Pravette*, the Seventh Circuit noted that "courts faced with this issue have refused to apply this provision to government employees testifying in criminal trials based on the rationale that no individual can bind the sovereign."[7] In this case, Grimes' investigation related to a different criminal case. The results of his investigation

---

[5] There are circuits, however, that have held that statements made by a prosecutor, rather than some other government employee, are admissible against the Government as a party admission under 801(d)(2)(D) because prosecutors have the power to bind the sovereign. *See, e.g., United States v. Salerno*, 937 F.2d 797, 811-12 (2d Cir. 1991); *see also, United States v. DeLoach*, 34 F.3d 1001, 1005 (11th Cir 1994).

[6] 874 F.2d 634, 638 (9th Cir. 1989).

[7] 16 F.3d 767, 799 n.9 (7th Cir. 1994), citing, *United States v. Kampiles*, 609 F.2d 1233, 1245 (7th Cir. 1979) ("Because the agents of the Government are supposedly disinterested in the outcome of a trial and are traditionally unable to bind the sovereign, their statements seem less the product of the adversary process and hence less appropriately described as admissions of a party.").

9

were never adopted by the Department of Justice, and no prosecution was recommended. It hardly seems within the spirit of Rule 801(d)(2)(D) to admit Grimes' opinion regarding Officer Ragsdale's veracity as an admission by the Government. Therefore, the district court did not abuse its discretion in ruling that Grimes' report could not be attributed to the Government.

## II. Forensic Expert Opinion

Garza argues that the district court abused its discretion in not allowing forensic document examiner, Linda James, to testify that the signatures of witness Kim Sanders on Garza's alleged confession and consent to search did not match known signatures of Sanders. At trial, Sanders testified that he witnessed Garza's confession and consent. The defense then called Linda James, a handwriting expert, to testify that Sanders' signatures on Garza's statements were forgeries. The prosecution objected and the district court allowed the parties to state their positions outside the hearing of the jury.[8] At that time, James was examined by the defense and the prosecution. She explained that her expert opinion was based on her examination of six photocopied documents, four of which were known to have been signed by Sanders, and two documents with alleged signatures of Sanders that were being questioned. The

---

[8] The prosecution first objected to the relevance of James' testimony. The district court correctly ruled that James's testimony was relevant to whether or not Sanders signed the statements as a witness. Therefore, relevancy is not an issue before the Court.

questioned documents included Garza's confession and consent to search.  James concluded that the two questioned documents were signed by someone other than the signer of the other four documents.

The prosecution objected that James' testimony should be excluded because the defense did not follow the discovery rules by disclosing the expert and her opinion before trial.  Defense counsel argued that the prosecution never requested such information.  However, the district court rejected the defense's argument, finding that the pretrial order clearly provided for reciprocal discovery.  This Circuit has held that "a trial court's decision to exclude evidence as a means of enforcing a pretrial order 'must not be disturbed' absent a clear abuse of discretion."[9] In exercising its discretion in considering the imposition of sanctions for discovery violations, a district court should consider the following factors: (1) the reasons why the disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances.[10]  "In fashioning any such sanction, the district court should impose only that sanction which is the least severe way to effect compliance

---

[9] *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990), citing, *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971); see also Fed.R.Civ.P. 16(f).

[10] *US v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000).

11

with the court's discovery orders."[11]

Defense counsel makes a lot out of the argument that they did not have to produce an expert report because Ms. James testified that she did not prepare a report until the day that she walked into the court to testify. However, it is really of no consequence whether exclusion of Ms. James' testimony was too harsh of a sanction for a pretrial order violation, if there even was a violation. This is because the district court also based its opinion on Federal Rule of Evidence 702.[12]

Out of the hearing of the jury, James admitted that she did not know how many times the documents had been photocopied, but she testified that she believed the quality of the copies were clear enough for her to use them as the basis of her opinion. James also admitted that she requested original exemplars of Sanders' signature from defense counsel, but that originals were not provided. When questioned, James agreed that to look at the original signatures is the best practice. After considering this, the district court stated, "I find that her testimony, based on the

---

[11] *Id.*

[12] Fed.R.Evid. 702 provides that: "If scientific, technical, or other specialized knowledge will assist the tried of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

examination of copies, comparing them, copies, Xerox copies, without any knowledge about how often they had been copied, whether that's a second, third, fourth, fifth, or tenth copy that had been made, in other words, a copy of a copy, I find that her testimony would not be reliable under Rule 702." As a considered determination applying the correct legal standard, it cannot be said that the district court's ruling was an abuse of discretion.

Garza refers to cases that suggest that James's reliance on photocopies went to the weight of her opinion, rather than to its admissibility. However, as the district court points out, in this case, the expert was not even sure how many times the signatures had been photocopied. Furthermore, even if the district court was in error for excluding the expert testimony, such error was harmless and did not effect Garza's substantial rights. To offset any potential prejudice to the defense, the district court allowed the copies of the signatures to be admitted into evidence so that the jury could compare the signatures and draw their own conclusions. This Court has repeatedly held that juries are capable of comparing signatures to determine authenticity.[13] Therefore, Garza was able to impeach Sanders even without the expert testimony of Ms. James.

**III. Remand in Light of *U.S. v. Booker***

---

[13] *See United States v. Ismolia*, 100 F.3d 380, 387-88 (5th Cir. 1996); *see also United States v. Wylie*, 919 F.2d 969, 978 (5th Cir. 1990).

13

Garza argues that due process and ex post facto constitutional concerns require that a defendant who committed a crime prior to the Supreme Court's opinion in *United States v. Booker* be sentenced only according to Justice Stevens' merits opinion and not Justice Breyer's remedy opinion.[14] Garza was sentenced to 360 months imprisonment in September 2004. Prior to his sentencing, Garza objected to the Presentence Report, which called for a sentence enhancement based upon obstruction of justice and being involved in a conspiracy involving 500 grams or more of cocaine and 500 grams or more of methamphetamine. Garza argues that these enhancements were unconstitutional because he neither admitted to, nor did a jury find beyond a reasonable doubt, the specific quantity of drugs, or that he obstructed justice. The Presentence Report placed Garza in the sentencing range of 360 months to life imprisonment, and recommended 360 months. However, because Garza claims that the district court was prohibited from enhancing Garza's sentence based upon the above facts, Garza insists that the appropriate guideline range was 27 - 33 months of imprisonment.

In *Booker*, Justice Stevens wrote the merits opinion which concluded that the jury trial requirements of the Sixth Amendment apply to the federal sentencing guidelines.[15] Therefore, Justice Stevens concluded that "[a]ny fact (other than a prior conviction)

---

[14] 543 U.S. 220, 125 S.Ct. 738 (2005).

[15] 125 S.Ct. at 755.

14

which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."[16] Justice Breyer wrote the remedies portion of the *Booker* opinion, in which the Court invalidated provisions of the Sentencing Reform Act that made the federal sentencing guidelines mandatory.[17] The Court concluded that the sentencing guidelines are now advisory, which cures any Sixth Amendment problem.[18]

Garza fails in his argument that, based on due process and ex post facto concerns, only the merits portion of *Booker* applies to his sentence. This Court has already rejected this ex post facto argument in *United States v. Scroggins*.[19] However, because Garza objected to his sentence enhancements before the district court, and those enhancements, based on facts not admitted to by Garza nor found by a jury beyond a reasonable doubt, were imposed under a mandatory sentencing scheme, Garza is entitled to have his sentence vacated and remanded, unless the error was harmless.[20] The burden

---

[16] *Id.* at 756.

[17] *Id.* at 756-769.

[18] *Id.* at 757.

[19] 411 F.3d 572 (5th Cir. 2005).

[20] *See United States v. Pineiro*, 410 F.3d 282, 284-85 (5th Cir. 2005).

15

of proof is on the Government to show that the error was harmless by proving beyond a reasonable doubt that the error did not contribute to the sentence received.[21] The record reveals that, at sentencing, when the district judge sentenced Garza to 360 months imprisonment, he also orally imposed two alternative sentences in anticipation of *Booker*. First, the court imposed "a discretionary alternative sentence the same as that imposed under the guidelines to become effective if the Supreme Court of the United States declares the United States Sentencing Guidelines unconstitutional."

Second, the court imposed "a further discretionary alternative sentence, the same as that imposed under the guidelines to become effective if the Supreme Court of the United States declares the United States Sentencing Commission Guidelines constitutional but requires all facts used in enhancing the sentence under the sentencing guidelines to either be admitted – either admitted by the Defendant of found by the jury beyond a reasonable doubt."

The district court's alternative sentences were not included in the written judgment but were made orally. "[W]hen there is a conflict between a written sentence and an oral pronouncement, the oral pronouncement controls."[22] However, if there is "an ambiguity between the two sentences, the entire record must be examined to

---

[21] *Id*. at 285.

[22] *United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001).

16

determine the district court's true intent."[23]  In the case before us, there is an ambiguity in the oral pronouncement itself, and we cannot ascertain the district court's true intent from an examination of the record.

Keeping with this Circuit's precedent, the trigger for the first alternative sentence - the Guidelines being declared unconstitutional in their entirety - did not occur.  Therefore, the first alternative sentence did not come into play.[24]  With regard to the second alternative sentence, this Circuit has held in recent cases that similarly worded alternative sentences were ambiguous.[25]  Similar to those cases, there is nothing in the record to suggest that the district judge anticipated the remedial holding in *Booker*, such that he considered the Guidelines as one factor among others in determining Garza's sentence.

Criminal sentences must "reveal with fair certainty the intent of the court to exclude any serious misapprehensions by those who must execute them."[26]  Therefore, unclear or ambiguous sentences must be vacated and remanded for clarification in "the interest of

---

[23] *Id.*

[24] *See United States v. Story*, 439 F.3d 226, 232-33 (5th Cir. 2006); *see also United States v. Adair*, 436 F.3d 520, 527 (5th Cir. Jan. 13, 2006) (citing *United States v. Walters*, 418 F.3d 461 (5th Cir. 2005)).

[25] *Id.*

[26] *United States v. Daughtery*, 269 U.S. 360, 363 (1926).

17

judicial economy and fairness to all concerned parties."[27]  It is unclear whether the district judge anticipated that the Supreme Court would take the remedial measure of rendering the Guidelines advisory rather than completely invalidating them.

## CONCLUSION

Garza has not shown an abuse of discretion in any of the district court's evidentiary rulings.  As such, he is not entitled to a new trial on that basis.  Further, we find that Garza's sentence is ambiguous, and we cannot simply remand for imposition of the second alternative sentence.  For the reasons stated above, Garza's conviction is AFFIRMED and his sentence is VACATED and REMANDED for sentencing proceedings consistent with this opinion.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**

---

[27] *United States v. Patrick Petroleum Corp.*, 703 F.2d 94, 98 (5th Cir. 1982); *see also United States v. Walters*, 418 F.3d 461 (5th Cir. 2005)(remanding for resentencing where the court found ambiguity in the lower court's alternative sentences); *United States v. Garcia-Ortiz*, 310 F.3d 792 (5th Cir. 2002)("In light of the ambiguity in the record, the best course is to remand the case for reconsideration of the sentence.")