UNITED STATES of America, Appellee,

v.

Primitivo CORTEZ, Appellant.

No. 90–1987.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1991.
Decided May 30, 1991.
Rehearing Denied July 30, 1991.

Russell S. Dameron, Kansas City, Mo., for appellant.

Charles F. Teschner, Kansas City, Mo., for appellee.

Before McMILLIAN, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Primitivo Cortez was convicted by a jury of knowingly possessing marijuana with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (1988). On appeal, defendant raises ten issues that he claims resulted in an unfair trial. Defendant seeks a reversal of the judgment of the District Court [1] and an order for either his discharge or a new trial. For the reasons stated below, we affirm the conviction.

I.

On August 19, 1989, Cortez was stopped on Interstate 35 near Cameron, Missouri by Sergeant John Elliott of the Missouri Highway Patrol. The trooper had observed the northbound van driven by Cortez weaving across the centerline and back onto the shoulder. Cortez provided Sergeant Elliott with his driver's license and said that the

---

[1]. The Honorable Joseph E. Stevens, Jr., United States District Judge for the Eastern and Western Districts of Missouri.

van was owned by his uncle. The vehicle registration showed that the van was owned by an Elias Carlos with the same Pharr, Texas address as indicated on defendant's license. However, when Elliott asked Cortez the name of his uncle, he replied, "I don't know." Trial Transcript, vol. I at 18, 37. His suspicions aroused, Sergeant Elliott asked Cortez to take a seat in the patrol car for further questioning. After examining Cortez's resident alien and social security cards, Elliott asked Cortez where he was going. Defendant answered, "Illinois." When asked where in Illinois, defendant replied, "I don't know." Trial Transcript, vol. I at 19. The trooper asked if he could search the van. Cortez agreed and signed a consent-to-search form written in English and Spanish.

Inside the back of the van, Sergeant Elliott found wire, fencing, and an open bag of cement. However, his closer examination of the van's interior revealed that someone had tampered with the cargo compartment: the side rails had been removed and caulking material had been painted silver to resemble a weld. Elliott returned to his patrol car to get a tape measure. After measuring the exterior and interior walls of the cargo compartment, the trooper discovered a nineteen-inch discrepancy between the two walls. Elliott asked Cortez if he could take the van to the zone office in Cameron so it could be searched more thoroughly. Cortez again consented.

In Cameron, Cortez waited inside the zone office while the van was unloaded and searched by Sergeant Elliott. His inspection revealed 141 packages of marijuana (weighing a total of approximately 800 pounds) concealed behind two plywood panels. Edra Cheryl Anderson, a local Spanish teacher, was called to the office to read Cortez his *Miranda* rights and to act as an interpreter during the police interviews. Cortez told Mrs. Anderson that he did not know that marijuana had been concealed in the van, that he did not know where he was driving the van, and that he did not know whom he was supposed to meet or call when he arrived at the unknown destination. When she asked "how [he was] going to work this out if [he] didn't know where

[he was] going to go and who [he was] going to call," Cortez again answered that he did not know. Trial Transcript, vol. I at 62. The police then had Mrs. Anderson ask Cortez if he would cooperate with them by continuing his journey. Defendant replied, "What's in it for me?" Believing that Cortez may not have understood the question, Mrs. Anderson repeated the police request two or three times. Defendant's response remained the same: "He wanted to know if he did that what would be in it for him." Trial Transcript, vol. I at 63.

Questioning of Cortez proceeded without Mrs. Anderson after police learned that Agent Jesse Stoker of the Immigration and Naturalization Service, who was fluent in Spanish, would be available to assist them. While waiting for the agent to arrive at the office, Sergeant Larry Stobbs of the Drug and Crime Control Division of the Missouri Highway Patrol continued to ask Cortez in English about his journey. With the aid of a map, Cortez told Stobbs that he had left Zapata, Texas the morning before he had been arrested. He said he had been instructed by his uncle—whose name he could not provide—to drive the van along Interstate 35 to Interstate 80 until he reached the Iowa River outside of Coralville, Iowa. Somebody, Cortez was told, would signal him to stop by honking a car's horn and flashing its lights. Whoever stopped him would tell him how he was to return to Texas. His uncle had paid him a thousand dollars to cover his expenses for delivering the van. Cortez had nearly seven hundred dollars cash in his possession at the time he was arrested.

Upon Agent Stoker's arrival at the office, questioning resumed in Spanish. Cortez repeated his story, adding that the people who were supposed to meet him at the Iowa River would be taking him to the bus station so he could catch a bus back to Texas. Again, Cortez was asked if he would cooperate with police by continuing his journey. And again, Cortez responded: "What's in it for me?" Trial Transcript, vol. II at 8.

Indicted for possession of marijuana with intent to distribute, Cortez was confined to

the Lafayette County Jail in Lexington, Missouri pending trial. The case was first tried in December 1989 with the jury unable to reach a unanimous verdict. At the second trial in January 1990, after deliberating for approximately four and a half hours, the jury indicated that it was deadlocked. Over defendant's objections, the District Court gave the jury an *Allen* charge. After an additional four and a half hours of deliberations, the jury returned a guilty verdict against Cortez.

Of the ten issues raised by Cortez on appeal, only five merit discussion. He argues that the trial court erred in 1) excluding the expert testimony of a clinical psychologist regarding the defendant's brain damage, psychological profile, and character traits; 2) admitting the opinion testimony of two police officers regarding the truthfulness of a government witness; 3) giving the jury an *Allen* charge after it was unable to reach a verdict; and 4) denying his motion to suppress the marijuana seized as a result of the highway stop. Finally, he argues that the evidence produced at trial was insufficient to sustain his conviction.[2]

### II.

■ Cortez argues that the trial court erred when it excluded evidence of his "character traits." Dr. Dennis Morgan, a psychologist who had examined Cortez, was prepared to testify that he suffered from mild dementia, memory impairment, and a schizoid personality disorder. These mental deficiencies, according to Dr. Morgan, manifest themselves in an "inability to recall certain facts" and a tendency to be "somewhat withdrawn, somewhat of a loner." Transcript of Testimony of Dennis Morgan at 11, 14 [hereinafter Morgan Testimony]. Cortez argues that Dr. Morgan's testimony was vital to his case to enable "the jury to fully appreciate and understand the events surrounding [his] arrest and interrogation, as well as the defendant himself and his in-court testimony." Appellant's Brief at 20–21. Without hearing testimony of an expert explaining the manifestations of such mental deficiencies, Cortez suggests, a jury might conclude that he was lying and being evasive.

■ The decision to exclude expert testimony is a matter within the sound discretion of the trial judge, and we will reverse only if his ruling was an abuse of discretion. *United States v. Rose*, 731 F.2d 1337, 1345 (8th Cir.), *cert. denied*, 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984). To be admissible, testimony by an expert must be based on specialized knowledge that will assist the jury in understanding the evidence or in determining a fact in issue. Fed.R.Evid. 702. As correctly stated by the District Court, the rule "permit[s] opinion or expert testimony only when it will be helpful to the finder-of-fact." Morgan Testimony at 17. After questioning Dr. Morgan during Cortez's offer of proof, the court determined that no useful purpose would be served by having Dr. Morgan tell the jury that Cortez "is slow to answer, forgets easily and doesn't express himself very well." Morgan Testimony at 17. Because these aspects of Cortez's personality could be readily observed by the jurors when he testified at trial, the court concluded that Dr. Morgan's testimony "does not fall into th[e] category" of being helpful to the finder of fact. Morgan Testimony at 22. We see no abuse of discretion in the court's decision excluding this testimony.[3]

---

2. The issues raised by Cortez that we reject without discussion as lacking in merit are: that the trial court erred in 1) refusing to allow defendant to impeach a government witness with alleged prior inconsistent statements; 2) admitting police testimony on the value of the marijuana seized; 3) excluding opinion testimony regarding Cortez's truthfulness; 4) admitting testimony and physical evidence that was allegedly irrelevant, immaterial, and prejudicial; and 5) refusing to strike a juror for cause.

3. That Cortez frames his argument as a "character trait" issue governed by Rule 404(a)(1) does not change our result. Although the rule does not define "character trait," the term has traditionally "refer[red] to elements of one's disposition, 'such as honesty, temperance, or peacefulness.'" *United States v. West*, 670 F.2d 675, 682 (7th Cir.), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 and 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982) (quoting McCormick on Evidence § 195). We do not believe that Rule 404(a)(1) encompasses slow-

### III.

█ Cortez contends that the District Court erred by allowing two law enforcement officers to testify to the truthfulness of a witness for the government. That witness, William Bright, had been detained in a cell with Cortez at the Lafayette County Jail for two or three days. Bright, a truck driver, had been arrested at the truck scales near Odessa, Missouri on three felony warrants from Arizona. He subsequently was transferred to Arizona where he was incarcerated for several weeks before pleading guilty to one count of larceny, for which he was sentenced to probation and time served. While his presentencing investigation was being conducted, Bright returned to Missouri where he contacted Guy Blankenship, a detective with the Carthage, Missouri Police Department. Following a brief telephone conversation to arrange a meeting, Bright told Blankenship in a one hour discussion that during his detainment at the Lafayette County Jail he was approached by Cortez with an offer of $75,000 to transport marijuana from Texas to the Kansas City area. Blankenship passed this information to Harvey Eugene Sparks, a special agent with the Drug Enforcement Administration, who made arrangements to meet with Bright. Sparks and Bright met on two separate occasions to discuss Bright's account of Cortez's attempt to hire him at the jail to haul marijuana. The first meeting lasted about forty-five minutes, the second several hours. Neither Blankenship nor Sparks offered to assist Bright with his legal problems in Arizona and no reward was provided for the information from Bright. Both officers testified at Cortez's trial that each had formed an opinion with respect to Bright's truthfulness and that each believed him to be truthful. Trial Testimony, vol. II at 52, 60–61. Cortez argues that this testimony should have been excluded because neither Blankenship nor Sparks had any foundation to form an opinion as to Bright's veracity.

█ Opinion testimony may be admitted to support the credibility of a witness if, *inter alia,* the testimony refers only to the witness's character for truthfulness. Fed. R.Evid. 608(a). Admissibility of opinion testimony by lay witnesses is further limited by Rule 701, which requires that the testimony be based on first-hand knowledge and be helpful to resolving a fact in issue. "An opinion, or indeed any form of testimony, without underlying facts, may be excluded if it amounts to no more than a conclusory observation." *United States v. Dotson,* 799 F.2d 189, 192–93 (5th Cir. 1986).

Although we are mindful that the trial court has broad discretion in determining the admissibility of opinion testimony, we find the reasoning of the Fifth Circuit in *Dotson* persuasive. In *Dotson,* the court held that the opinion testimony of three government agents that the defendant and his witnesses were not to be believed under oath was inadmissible because it lacked foundation. 799 F.2d at 193. The only basis offered by the agents was the fact that they had taken part in a criminal investigation of the defendant. The court concluded that because "one had conducted an investigation of the defendant, has known the defendant, or has had minimal contact with defendant's witnesses is not a sufficiently reliable basis under Rules 608(a) and 701 for that witness, over objection, to put before the jury the opinion that they are liars." 799 F.2d at 194.

Neither Blankenship nor Sparks participated in the investigation of Bright. Neither participated in the investigation of Cortez. Neither had known Bright until he came forward with his information about his jail-house conversations with Cortez. Neither had spent even a single full day with Bright. Their knowledge based on these minimal contacts with Bright is insufficient to provide a basis upon which either Blankenship or Sparks could form an opinion concerning Bright's character for truthfulness. Their testimony does not even

---

ness to answer, forgetfulness, or poor ability to express oneself; as the District Court observed, these propensities could readily be observed by

the jury during Cortez's testimony. *See West,* 670 F.2d at 682 (intelligence is not a character trait within the meaning of the rule).

speak to his general character for truthfulness; instead, it merely expresses their belief in the story he told them. We therefore hold that the District Court abused its discretion by allowing into evidence the opinions of Blankenship and Sparks as to Bright's truthfulness.

■ Our decision that the District Court erred does not require reversal. *See* Fed. R.Crim.P. 52(a). "An error is harmless if the reviewing court, after viewing the entire record, determines that no substantial rights of the defendant were affected, and that the error did not influence or had only a very slight influence on the verdict." *United States v. McCrady,* 774 F.2d 868, 874 (8th Cir.1985) (citations omitted). In the present case, Bright's tale of jailhouse talk, while probative, was hardly a key bit of evidence. Viewing the entire record, we are satisfied the error was harmless beyond a reasonable doubt. The jury had before it evidence that Cortez, traveling alone, had driven a van containing over 800 pounds of marijuana from south Texas to Iowa, heading according to Cortez's account for an unknown location in Iowa or Illinois (to meet he did not know whom and to do he did not know what), all without any plausible explanation for this strange odyssey. Cortez took the stand and denied that he knew he was hauling marijuana. Considering the strength of the incriminating evidence, it clearly was Cortez's credibility, not Bright's, that was the crucial issue for the jury to decide. In these circumstances, the error in admitting the officers' testimony as to Bright's truthfulness does not require reversal.

### IV.

The use of an *Allen* charge[4] is the subject of defendant's next claim of error. After four and a half hours of deliberations, the jury notified the court that it appeared to be deadlocked. In response, the court informed counsel for both sides that it intended to give an *Allen* charge to the jury when court reconvened the following morning; over objections by Cortez, the charge was given as Instruction No. 16.[5]

---

4. Named after *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), "[t]hese charges expressly direct jurors to reconsider their positions, and address the minority or dissenting jurors alternatively, when a majority is for conviction or when a majority is for acquittal." *Potter v. United States,* 691 F.2d 1275, 1277 (8th Cir.1982).

5. Instruction No. *16*

As stated in my instructions, it is your duty to consult with one another and to deliberate with a view to reaching agreement if you can do so without violence to your individual judgment. Of course, you must not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinions of other jurors or for the mere purpose of returning a verdict. Each of you must decide the case for yourself; but you should do so only after consideration of the evidence with your fellow jurors.

In the course of your deliberations you should not hesitate to re-examine your own views, and to change your opinion if you are convinced it is wrong. To bring twelve minds to a unanimous result you must examine the questions submitted to you openly and frankly, with proper regard for the opinions of others and with disposition to re-examine your own views.

Remember that if in your individual judgment the evidence fails to establish guilt beyond a reasonable doubt, then the defendant should have your vote for a not guilty verdict. If all of you reach that same conclusion, then the verdict of the jury must be not guilty. Of course, the converse is also true. If in your individual judgment the evidence establishes guilt beyond a reasonable doubt, then your vote should be for a verdict of guilty and if all of you reach that conclusion then the verdict of the jury must be guilty. As I instructed you earlier, the burden is upon the government to prove beyond a reasonable doubt every essential element of the crime charged.

Finally, remember that you are not partisans; you are judges—judges of the facts. Your sole interest is to seek the truth from evidence. You are the exclusive judges of the credibility of the witnesses and the weight of the evidence.

You may conduct your deliberations as you choose. But I suggest that you now carefully reconsider all the evidence bearing upon the questions before you. You may take all the time that you feel is necessary.

There is no reason to think that another trial would be tried in a better way or that a more conscientious, impartial or competent jury would or could be selected to hear it. Any future jury must be selected in the same manner and from the same source as was used in the selection of this jury. If you should fail to agree on a verdict, the case is left open and must be disposed of at some later time.

After another four and a half hours of deliberations, the jury returned a guilty verdict against Cortez.

■ Echoing his objections at trial, Cortez attacks the District Court's use of the *Allen* charge on two levels. From a general perspective, he argues that the use of the charge violated his Fifth Amendment right to due process because of the charge's coercive effect on the jury. Cortez urges us to abolish the use of the *Allen* charge in the district courts of our circuit. To do so, however, would require us to depart from our long line of decisions rejecting claims that the *Allen* charge is inherently coercive, prejudicial, and unconstitutional, *see Potter*, 691 F.2d 1275, 1276 (8th Cir.1982); *United States v. Skillman*, 442 F.2d 542, 558 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971), and such a departure is beyond the power of our panel. *See Krause v. Perryman*, 827 F.2d 346, 349 (8th Cir.1987) (three-judge panel may not overrule the established law of the circuit). Moreover, as we stated more than two decades ago: "The Supreme Court has not yet seen fit to disavow [the *Allen* charge] and, so long as it stands approved in decided Supreme Court cases, we are not to resolve that issue contrarily." *Hodges v. United States*, 408 F.2d 543, 552 (8th Cir.1969).

■ On a specific level of attack, Cortez challenges the manner and form in which the *Allen* charge was used in this case. At issue is the District Court's modification of the *Allen* charge prepared by the Committee on Model Criminal Jury Instructions for the Eighth Circuit.[6] Noting that the Eighth Circuit has cautioned trial courts to "avoid substantive departures from the formulations of the charge that have already received judicial approval," *Potter*, 691 F.2d at 1277 (quoting *United States v. Flannery*, 451 F.2d 880, 883 (1st Cir.1971) ), Cortez argues that the changes

effected by the District Court rendered Instruction No. 16 fatally defective.

The changes at issue are contained in the third paragraph of the court's revised *Allen* charge. The first sentence of the model instruction's third paragraph is rewritten in language addressing the individual juror, rather than the collective jury, with respect to his duty to vote for acquittal if, in his independent judgment, the evidence did not establish guilt beyond a reasonable doubt. The second change consists of the addition of the following sentences: "Of course the converse is also true. If in your individual judgment the evidence establishes guilt beyond a reasonable doubt, then your vote should be for a verdict of guilty and if all of you reach that conclusion then the verdict of the jury must be guilty." Trial Transcript, vol. II at 201. Cortez argues that the changes made by the District Court to the model instruction dilute the burden of proof and the presumption of innocence. We disagree. Neither change affects either the burden of proof the government must carry or the presumption of innocence. Moreover, because the court was unaware of how the jury stood numerically when it gave the revised *Allen* charge, the inclusion of language covering both the jury's duty with respect to acquittal and its converse duty with respect to conviction is consistent with our earlier decisions requiring the *Allen* charge to direct the majority as well as the minority to reconsider its position. *Potter*, 691 F.2d at 1279; *see Hodges*, 408 F.2d at 552–53 & n. 4. We cannot conclude that the changes made by the District Court amount to substantive departures from instructions previously approved by this court or in any way render the charge improper.

Our analysis does not stop here. The content of the instruction is but one of four factors we consider in determining whether a challenged *Allen*-type charge impermissi-

---

Please go back now to finish your deliberations in a manner consistent with your good judgment as reasonable persons.
Trial Transcript, vol. II at 200–02.

**6.** Although the District Court refers to Instruction No. 7.02 of the Manual of Model Criminal

Jury Instructions for the Eighth Circuit (rev. ed. 1986), it actually modified a later and shorter version of the model *Allen* charge, renumbered 10.02 in the 1989 Revised Edition of the Manual. *See* Trial Transcript, vol. II at 191.

bly coerced the jury. Also reviewed are "[1] the length of the period of deliberation following the *Allen* charge, [2] the total time of deliberation, and [3] any indicia in the record of coercion or pressure upon the jury." *United States v. Smith*, 635 F.2d 716, 721 (8th Cir.1980). The facts here do not support defendant's contention that the verdict of guilty was coerced by the court's giving Instruction No. 16 to the jury. Deliberations continued for four and a half hours before the jury reached its verdict. This amount of time equalled the period spent by jurors in deliberations prior to the charge. And our review of the record shows no indication that the jury was coerced or pressured to render a verdict. We conclude that the District Court did not err when it gave Instruction No. 16 to the deadlocked jury.

## V.

Cortez next claims that the District Court erred in its decision to admit the marijuana seized and the statements he made as a result of the traffic stop. He argues that the evidence should have been suppressed because the stop was pretextual and his subsequent consent to search the van was involuntary.

■ Defendant's pretextual stop argument requires little discussion. "When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle." *United States v. Cummins*, 920 F.2d 498; 500 (8th Cir.1990). In the present case, Sergeant Elliott observed the van Cortez was driving go onto the highway's shoulder twice and then cross into the passing lane as another car was trying to pass it. Sergeant Elliott had an objective and legitimate reason to stop the van; not a shadow of pretext is involved here.

■ We also are unpersuaded by Cortez's arguments that the search of the van was unconstitutional. A consensual search does not violate the Fourth Amendment, if the consent was voluntarily given without coercion. *United States v. Archer*, 840 F.2d 567, 573 (8th Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102

L.Ed.2d 354 (1988); *United States v. Matthews*, 603 F.2d 48, 51 (8th Cir.1979), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 650 (1980); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). The issue of consent requires consideration of the totality of the circumstances and is a question of fact. *United States v. Weir*, 748 F.2d 459 (8th Cir.1984). In our review of the District Court's finding, we apply the clearly erroneous standard. *Archer*, 840 F.2d at 573.

After examining the record, we are convinced that the finding of the District Court that Cortez freely and voluntarily gave his consent for Sergeant Elliott to search the van is not clearly erroneous. When the officer asked permission to conduct the search, Cortez agreed without hesitation. He even attempted to open the van's rear door, but was stopped by the officer who first wanted to obtain a written consent. The consent form read and signed by defendant was written in English and in his native language, Spanish. A portion of the consent form read: "I understand I have the right to refuse to consent to the search.... I state that no promises, threats, force[,] or physical or mental coercion of any kind whatsoever has been used against me to consent to this search." Trial Transcript, vol. I at 44. Sergeant Elliott was the only officer present at the time Cortez signed the consent form. Nothing in the record suggests that if Cortez had refused permission to search the van he would not have been free to leave. After obtaining written consent and again obtaining oral consent, Elliott proceeded to search the van. When he discovered the measurement discrepancy between the van's exterior and interior side panels, the officer asked Cortez if the vehicle could be taken to the patrol office for a more thorough search. Cortez agreed. Again, nothing in the record suggests that if he had refused the officer's request he would not have been allowed to go on his way. As the District Court's finding on the consent issue is not clearly erroneous, we conclude

that the court properly denied Cortez's motion to suppress.

## VI.

 The final issue Cortez raises on appeal is whether the evidence presented at trial is sufficient to sustain his conviction. We review the evidence in the light most favorable to the government, which includes giving it the benefit of all reasonable inferences. *United States v. Temple*, 890 F.2d 1043, 1045 (8th Cir.1989). To convict Cortez under 21 U.S.C. § 841(a)(1), the government had to prove beyond a reasonable doubt that he knowingly possessed and intended to distribute the marijuana found in the van. Cortez argues that the government failed to prove his possession of the contraband was knowing.

"Proof of constructive possession is sufficient to satisfy the element of knowing possession under § 841(a)(1)." *United States v. Matra*, 841 F.2d 837, 840 (8th Cir.1988). Constructive possession of contraband is established when a person "has ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed." *United States v. Schubel*, 912 F.2d 952, 955 (8th Cir.1990).

Cortez claims that he did not know the van he was driving across the United States contained 800 pounds of concealed marijuana. In a recent case, we held there was insufficient evidence to prove that a driver of a station wagon knowingly possessed 200 pounds of cocaine concealed in luggage within the vehicle. *United States v. Pace*, 922 F.2d 451 (8th Cir.1990). However, unlike the facts in *Pace*, Cortez was the only person in the vehicle he was driving when the drugs were discovered. Cortez had complete and sole control and dominion over the van in which the marijuana was concealed. This fact alone is sufficient to satisfy the government's burden. *See United States v. Muniz–Ortega*, 858 F.2d 258 (5th Cir.1988) (evidence that defendant was driving alone in truck containing 200 pounds of marijuana concealed in a secret compartment held sufficient to sustain conviction for knowing possession of the con-

traband). When we add to our review of the evidence Cortez's evasive answers and his telling inquiry "What's in it for me?" when asked if he would cooperate, there can be no doubt that a submissible case was made. It then became the task of the jury to weigh the evidence and to decide whether it showed Cortez guilty beyond a reasonable doubt. As the government made a submissible case, it follows that the evidence is not insufficient to sustain the jury's verdict.

The conviction is affirmed.