# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1587

_____

United States of America,

        Appellee,

v.

Joseph Trent Mosby,

        Appellant.

\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.

_____

Submitted:  January 12, 1999

Filed:  June 3, 1999

_____

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A jury convicted Joseph Trent Mosby of conspiracy to manufacture and distribute methamphetamine and the trial court sentenced him to 262 months' imprisonment.  Mr. Mosby appeals his conviction on the grounds that the judge was biased and should have recused himself, that the evidence was insufficient to support a conviction, and that much of the government's case was based on the testimony of "paid" witnesses; and he appeals his sentence on the grounds that the amount of drugs attributed to him was incorrectly calculated and that the trial court should have given

him a more lenient sentence because the jury's verdict was ambiguous.  We affirm the judgment of the trial court.[1]

## I.

Mr. Mosby argues that the trial judge erred by failing to recuse himself <u>sua sponte</u> pursuant to 28 U.S.C. § 455(a).  Mr. Mosby maintains that during a previous case he had made threats on the judge's life that were communicated to the judge through a motion filed with the court, and he therefore contends that the judge could not possibly have approached the trial in this case without bias.

Having reviewed the relevant motion, however, we find no mention of any threats made against the judge himself; the motion informs the judge only of threats that Mr. Mosby allegedly made against other people involved in that litigation.  There is thus nothing in the record before us that indicates that the trial judge knew of any threats on his life, if any in fact existed, so Mr. Mosby's contention that the judge should have recused himself is without merit.

## II.

Mr. Mosby next contends that the evidence was insufficient to support his conviction.  When considering a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and reverse " 'only if we conclude that a reasonable fact-finder must have entertained a reasonable doubt about the government's proof ' " of one of these  elements.  <u>United States v. Bascope-Zurita</u>, 68 F.3d 1057, 1060 (8th Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S.1062 (1996), quoting <u>United States v. Ivey</u>, 915 F.2d 380, 383 (8th Cir. 1990).

---

[1]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

To convict a defendant of conspiracy, the government must prove beyond a reasonable doubt that there was a conspiracy with an illegal purpose, that the defendant was aware of that conspiracy, and that he or she knowingly became a part of it. See, e.g., United States v. Bass, 121 F.3d 1218, 1220 (8th Cir. 1997). Mr. Mosby argues that there was insufficient evidence to prove that he knew of the conspiracy and knowingly became a part of it. Although he does not dispute the fact that he provided pills and iodine crystals to co-conspirators who then used these materials to "cook" methamphetamine, he contends that he thought the materials were being used for legal purposes only.

The evidence that there was a conspiracy to manufacture and distribute methamphetamine was overwhelming. "Once the government establishes the existence of a drug conspiracy, only slight evidence linking the defendant to the conspiracy is required to prove the defendant's involvement and support the conviction." United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996). The evidence linking Mr. Mosby to the conspiracy with respect to manufacture and distribution easily meets this burden and, indeed, would support a finding that Mr. Mosby, beyond a reasonable doubt, was a member of the relevant conspiracy. See Brent E. Newton, The Antiquated 'Slight Evidence Rule' in Federal Conspiracy Cases, 1 Journal of Appellate Practice and Process 49, 53 (1999) (criticizing the rule of our circuit and stating that we have "taken the lead in applying the slight evidence rule in dozens of conspiracy cases decided in the last few years").

Several government witnesses testified that Mr. Mosby provided the precursor materials for methamphetamine, and knew exactly how these materials were being used. With respect to distribution, several witnesses testified that they received drugs directly from Mr. Mosby himself. Viewing this evidence in the light most favorable to the guilty verdict, it is clear that a reasonable fact-finder could have found Mr. Mosby guilty beyond a reasonable doubt.

## III.

Mr. Mosby contends that the testimony of two co-conspirators who testified for the government should have been excluded because they were promised leniency by the government in exchange for their testimony -- a violation, he argues, of 18 U.S.C. § 201(c)(2), which criminalizes the exchange of "anything of value" for "testimony under oath or affirmation given or to be given ... as a witness upon a trial." Because this argument was not raised at trial, we may reverse only if the trial court committed plain error in admitting the evidence in question. See Fed. R. Crim. P. 52(b); see also, e.g., United States v. Millard, 139 F.3d 1200, 1203 (8th Cir. 1998), cert. denied, 119 S. Ct. 376 (1998).

Of the numerous circuit courts that have considered the argument that such plea agreements violate § 201(c)(2), only one has found it persuasive, see United States v. Singleton, 144 F.3d 1343, 1345-51 (10th Cir. 1998), vacated, 144 F.3d 1361 (10th Cir. 1998) (en banc), and even that result was undone en banc, see United States v. Singleton, 165 F.3d 1297, 1299-1302 (10th Cir. 1999) (en banc), petition for cert. filed (Mar. 31, 1999). We have, moreover, already joined all of the other circuits that have addressed this issue by ruling that "the statute does not sweep so broadly as to prevent prosecutors from offering leniency to an individual in exchange for truthful testimony." United States v. Johnson, 169 F.3d 1092, 1098 (8th Cir. 1999). We therefore hold that it was not plain error to allow the testimony of the two co-conspirators.

## IV.

Mr. Mosby contends that it was unclear whether the jury convicted him of conspiracy to manufacture, conspiracy to distribute, or both, and argues that, where there is an ambiguous verdict, a defendant must be sentenced in the lowest range that the verdict's permissible interpretations will allow. It is true that, given an ambiguous verdict, a court should sentence the defendant based on the interpretation of the verdict that produces the lowest sentence, see, e.g., United States v. Baker, 16 F.3d 854,

857-58 (8th Cir. 1994), but in this case the sentence would be the same however the verdict is interpreted.

Mr. Mosby contends that his sentence would have been lower if he had been sentenced only for conspiracy to distribute. We disagree. A sentence for conspiracy to distribute or conspiracy to manufacture is determined by the amount of the drugs involved in the conspiracy that were reasonably foreseeable to the defendant. See U.S.S.G. § 1B1.3(a)(1)(B). The portion of the record on which we rely in affirming the sentence that was imposed (see the next section) consists of testimony from a witness who delivered drugs from the manufacturers to the distributors. The entire amount in these deliveries, therefore, was already out of the hands of the manufacturers and had become part of a conspiracy to distribute. As a member of this conspiracy to distribute, it was reasonably foreseeable to Mr. Mosby that there would be other distributors like himself, and that this amount of drugs would be involved. Any ambiguity in the verdict therefore could have made no difference in his sentence.

## V.

Mr. Mosby maintains, finally, that the trial court erred in determining his sentence. "We review the district court's determination of drug quantity under a clearly erroneous standard," and will reverse "only if the entire record definitely and firmly convinces us that a mistake has been made." United States v. Sales, 25 F.3d 709, 711 (8th Cir. 1994).

The trial court sentenced Mr. Mosby at an offense level of 34, which requires a finding that there were between 300 and 1,000 grams of actual methamphetamine, or 3 to 10 kilograms of a mixture including methamphetamine, involved in the offense. See U.S. S.G. § 2D1.1(c)(3) (Nov. 1, 1995). Although Mr. Mosby admits, as he must, that he is accountable for all of the methamphetamine that was reasonably foreseeable to him, he raises a number of objections to the amount of drugs attributed to him for sentencing purposes.

-5-

Mr. Mosby first contends that there were actually two separate conspiracies, and that drugs from only one of them should have been attributed to him for sentencing purposes. The first conspiracy, the argument goes, ended when its leader lost his first source of methamphetamine in Warsaw, Missouri, and the second conspiracy began a month later when he acquired a second source in Arkansas. Mr. Mosby contends that he was involved in the first conspiracy only, and that the trial court improperly considered drugs from the second conspiracy in calculating the offense level for his sentence.

But the trial evidence, on which the court relied in fixing Mr. Mosby's sentence, supports a conclusion that the period of time during which the co-conspirators did not have a source of methamphetamine was not a hiatus between conspiracies, but a mere change in personnel in an ongoing conspiracy. This conclusion is buttressed by the fact that many of the same people remained involved with each other and sought to achieve the same objectives after the source of drugs had changed.

Mr. Mosby also contends that the trial court erred in calculating the quantity of drugs that ought to be imputed to him in fixing his sentence. One witness for the government, however, testified that he picked up and delivered at least 567 grams of drugs produced at the Warsaw lab, including the 122.25 grams that the police seized and subsequently determined to be 88 percent pure methamphetamine. The amount seized was therefore 107.58 grams of actual methamphetamine. If all 567 of the grams delivered by the witness were of the same purity, the amount of actual methamphetamine would be 498.96 grams, which is far more than the 300 grams necessary to justify the sentence imposed.

Mr. Mosby maintains that it should not be assumed that the 444.75 grams not seized had the same purity as the portion that was seized. We disagree. Expert testimony offered by a government witness tended to prove that the purity of methamphetamine produced in a lab is usually between 85 percent and 95 percent.

Given the fact that 88 percent is within this normal range of purity, and that the remainder of the methamphetamine was produced in the same lab by the same "cooks" who produced the portion determined to have a purity of 88 percent, the assumption that the purity would be consistent is manifestly reasonable. Mr. Mosby is therefore punishable for 498.96 grams of actual methamphetamine if it was foreseeable to him that this amount would be involved in the conspiracy.

The testimony of other witnesses tended in fact to show that Mr. Mosby provided necessary materials to the Warsaw lab for the purpose of "cooking" methamphetamine, and it was certainly foreseeable that his co-conspirators would do as planned and produce the amount of drugs attributed to him. Mr. Mosby is therefore accountable for that amount, and the trial court thus did not err in calculating his sentence.

## VI.

For the reasons stated, we affirm the judgment of the trial court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.