# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-1771

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota |
| Edwardo Flores Fitz, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: December 13, 2002

Filed: January 28, 2003

———————

Before WOLLMAN, HEANEY, and MAGILL, Circuit Judges.

———————

HEANEY, Circuit Judge.

After a trial by jury, Edwardo Flores Fitz, also known as Victor Manuel Crespo-Garcia, was found guilty of conspiracy to distribute and possess with intent to distribute methamphetamine and possession with intent to distribute and distribution of the same, and was sentenced to two concurrent terms of 188 months imprisonment.[1]

———————

[1]Jorge Luis Machucce Preciado and Jose Luis Garcia Vega were co-conspirators and were similarly charged. Both pled guilty to one count of conspiring to distribute and to possess with intent to distribute in excess of 500 grams of mixture

Fitz raises two issues on appeal to this court: first, that there was insufficient evidence to support the verdicts, and second, that the district court improperly denied his request for a downward departure pursuant to USSG § 3B1.2. After careful review of the record, we hold there was insufficient evidence to support Fitz's convictions. Having done so, there is no need for us to determine the sentencing issue.

I.

In June of 2001, a confidential informant of the Grand Forks, North Dakota Narcotics Task Force and the Polk County, Minnesota Drug Task Force reported that he could purchase large quantities of methamphetamine from an individual named Jorge, later identified as Jorge Preciado. They arranged to meet on June 28, 2001. On the evening of June 28, law enforcement officers observed three Hispanic males in two vehicles, a 1994 Nissan Pathfinder and a 1998 Honda Civic, near a Holiday Inn in Grand Forks. They parked the Nissan Pathfinder, and all three left the parking lot in the Honda Civic. Law enforcement watched the Civic travel to another hotel, the Westward Ho, for a short period of time, and then continue on to a restaurant. Some time later, the Civic left the restaurant and returned to the Holiday Inn, where the men picked up the Pathfinder. Both vehicles then departed for the Westward Ho. At the Westward Ho, one of the three men checked them into Room 188, under the name Antonio Mendoza.

---

and substance containing methamphetamine; one count of distributing and possessing with intent to distribute in excess of 500 grams of a mixture and substance containing methamphetamine, and a forfeiture count. *See United States v. Vega*, 50 Fed Appx. 328 (8th Cir. Nov. 6, 2002), and *United States v. Preciado*, 49 Fed. Appx. 662 (8th Cir. Nov. 1, 2002). Preciado was sentenced to 150 months of imprisonment, and Vega was sentenced to 135 months of imprisonment.

Preciado called the confidential informant at approximately 6:47 p.m., indicating that he was in the area and had the agreed-upon amount of methamphetamine. He further stated that he was looking for someplace to remove the drugs from their hiding place in the Nissan Pathfinder. After some more phone calls between Preciado and the confidential informant, Preciado and Fitz drove the Honda Civic to a local Burger King parking lot; the third man, Jose Vega, stayed with the Pathfinder at the Westward Ho. The confidential informant met Preciado at the Burger King parking lot. Fitz was present, but surveillance officers never heard him speak. Preciado and the confidential informant conversed in English. As Preciado and Fitz were leaving the parking lot in the Civic, they were arrested by Grand Forks Narcotics Task Force Officers. Vega, who was with the Pathfinder back at the Westward Ho, was also taken into custody.

A search of the Nissan Pathfinder revealed four packages containing approximately ten pounds of methamphetamine. They had been hidden in the Pathfinder's gas tank. Fitz, Preciado, and Vega were all charged with one count of conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846; and one count of possession with intent to distribute and distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Preciado and Vega pled guilty; Fitz entered a plea of not guilty and proceeded to trial. On December 20, 2001, Fitz was found guilty of conspiracy to distribute and possess with intent to distribute methamphetamine and possession with intent to distribute and distribution of methamphetamine.

Following the guilty verdict, Fitz moved for a judgment of acquittal based on insufficient evidence. Fitz's argument to the court below and to this court is that there was insufficient evidence to establish beyond a reasonable doubt that he knowingly participated in the conspiracy to sell drugs to the confidential informant or that he possessed the drugs with intent to distribute them. The district court found there was sufficient evidence to support a finding that a conspiracy to distribute

methamphetamine existed. It noted that the more difficult question was whether Fitz was a party to that conspiracy. The court stated that this was a close case, and pointed out that the government had not called either the confidential informant or the co-conspirators as witnesses.

## II.

### A.

This court reviews the sufficiency of the evidence to sustain a conviction de novo. *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002). "'In reviewing the sufficiency of the evidence to support a guilty verdict, we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict.'" *Id.* (quoting *United States v. Campa-Fabela*, 210 F.3d 837, 839 (8th Cir. 2000).

"We will uphold a jury verdict if substantial evidence supports it." *Cruz*, 285 F.3d at 697. Substantial evidence exists if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* We do not overturn jury verdicts lightly, and "[r]eversal is appropriate only where a reasonable jury could not have found all of the elements of the offense beyond a reasonable doubt." *United States v. Armstrong*, 253 F.3d 335, 336 (8th Cir. 2001).

In a conspiracy case, the government must prove there was a conspiracy with an illegal purpose, that the defendant was aware of the conspiracy, and that he knowingly became a part of it. *United States v. Beckman*, 222 F.3d 512, 522 (8th Cir. 2000); *United States v. Mosby*, 177 F.3d 1067, 1069 (8th Cir. 1999); *United States v. Bass*, 121 F.3d 1218, 1220 (8th Cir. 1997). Moreover, there must be evidence that the defendant entered into an agreement with at least one other person and that the agreement had as its objective a violation of law. *United States v. Robinson*, 217 F.3d

560, 564 (8th Cir. 2000). It is not necessary to prove an overt act in furtherance of a conspiracy. The conspiracy may be proved through circumstantial evidence and may be implied by the surrounding circumstances or by inference from the actions of the parties. *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995). "Once the government establishes the existence of a drug conspiracy, only slight evidence linking the defendant to the conspiracy is required to prove the defendant's involvement and support the conviction." *Beckman*, 222 F.3d at 521 (quoting *Mosby*, 177 F.3d at 1069).

## B.

With this background, we turn to a detailed discussion of the evidence and the reasons why we conclude there was insufficient evidence to establish Fitz's guilt on either count. As an initial matter, it is clear that the evidence against the defendant in each of the cases cited by the government is significantly stronger than in this case. In *Beckman*, the defendant was seen receiving methamphetamine and admitted purchasing it from a co-defendant. 222 F.3d at 522. In *Mosby*, several witnesses testified that they received drugs directly from Mosby. 177 F.3d at 1069. In *Bass*, five of Bass's co-conspirators testified against him; two confirmed they sold Bass large quantities of cocaine over an extended period of time, and two street-level dealers confirmed that they regularly purchased drugs from Bass for redistribution. 121 F.3d at 1220-21. In *Robinson*, the co-defendant testified that Robinson agreed to give him a cut of the methamphetamine if it was acceptable as a finder's fee. 217 F.3d at 562.

On the other hand, in *Shoffner*, this court reiterated that a defendant's mere presence, coupled with knowledge that someone else who intends to sell drugs is present, is insufficient to establish membership in the conspiracy. 71 F.3d at 1433-34. *See also United States v. Rork*, 981 F.2d 314, 316 (8th Cir. 1992) (holding that

defendant's knowledge of drug deal and presence during the transaction was insufficient to support conviction for conspiracy).

Applying the principles outlined above and reviewing the evidence in the light most favorable to the verdict, the only evidence in the record that could be said to support the view that Fitz knowingly participated in the conspiracy was the following: Fitz, Vega, and Preciado traveled from Minneapolis to Grand Forks in a Honda Civic and a Nissan Pathfinder, in which the drugs were hidden;  Fitz was observed in the presence of Preciado and Vega in Grand Forks at various locations between 6:00 p.m. and 9:30 p.m.;  Fitz gave a false name when he was arrested; and Fitz was present during a recorded conversation between the confidential informant and Preciado in the Burger King parking lot in Grand Forks, in which Preciado said he wanted everything and wanted to return to the motel to discuss the matter. Thereafter, Preciado and Fitz left the parking lot in a Honda Civic when they were stopped by the Grand Forks Narcotics Task Force officers and arrested.

On the other hand, there is considerable evidence that casts into serious doubt whether Fitz  knowingly participated in the conspiracy.  The confidential informant never talked to Fitz.  Moreover, the conversation that occurred in Fitz's presence between the confidential informant and Preciado was conducted in English, and there is no evidence in the record that shows that Fitz spoke or understands English.  He was provided with an interpreter during the entire trial and the sentencing hearing. Further, there is no evidence in the record to indicate that Fitz knew there were drugs in a secrect compartment in the Pathfinder's gas tank.  Also, when Preciado, Vega, and Fitz first arrived in Grand Forks, a hotel room was rented in the name of Antonio Mendoza.  This name was used in the past by Preciado at the same motel.

Nothing in the record indicates that Fitz had been in Grand Forks at an earlier date, and Fitz had no prior criminal record or any record of dealing in drugs. *See Rork*, 918 F.3d at 316.  The confidential informant had Preciado's pager number and

could reach Preciado at any time. Between June 26 and June 28, seven calls were made between the confidential informant and Preciado. There is no evidence, however, that the informant knew how to contact Fitz or ever sought to do so. There is no evidence Fitz ever rode in or drove the Pathfinder. Even if Fitz had been in the Pathfinder, the methamphetamine was well hidden in the Pathfinder, and there was no evidence in the record that Fitz was aware of the existence of the drugs.

Perhaps most importantly, the government failed to call the confidential informant as a witness even though the confidential informant was available and known only to the government. *See United States v. Graves*, 150 U.S. 118, 121 (1893) ("The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.").

In short, while the government can prove that a conspiracy existed between Preciado and Vega, the government failed to prove that Fitz was aware of the conspiracy, or that Fitz knowingly agreed to join the conspiracy. As the government cannot prove two of the three necessary elements of Fitz's alleged crimes, we cannot affirm his convictions.

### III.

There is no evidence in the record that would tend to show by inference or otherwise that Fitz was a knowing participant in the drug conspiracy or that he constructively possessed the methamphetamine because he was a passenger in a car that accompanied the Pathfinder from Minneapolis to Grand Forks. A verdict based on unsupported speculation cannot stand. Under these circumstances, we have no alternative but to reverse Fitz's convictions.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.