# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1335

_____

United States of America,      *
      *
      Appellee,      *    Appeal from the United States
      *    District Court for the
      v.      *    District of Nebraska.
      *
Alonzo Martinez-Camacho,      *    [UNPUBLISHED]
      *
      Appellant.      *

_____

Submitted:  June 19, 2003

Filed:  September 5, 2003

_____

Before BOWMAN, BEAM, and RILEY, Circuit Judges.

_____

PER CURIAM.

Alonzo Martinez-Camacho challenges the sufficiency of the evidence supporting his convictions for (1) conspiracy to distribute and possess with intent to distribute methamphetamine and marijuana and (2) possession with intent to distribute methamphetamine. See 21 U.S.C. §§ 841(a)(1), (b)(1) & 846 (2000). Having reviewed this challenge de novo and in the light most favorable to the verdict,

see United States v. Frost, 321 F.3d 738, 740 (8th Cir. 2003), we affirm the judgment of the District Court.[1]

To prove the conspiracy charge, the Government was required to prove that a conspiracy existed with an illegal purpose and that Martinez-Camacho was aware of it and knowingly joined it. See United States v. Fitz, 317 F.3d 878, 881 (8th Cir. 2003). The record contains substantial evidence of a conspiracy with the purpose of selling methamphetamine and marijuana. The evidence demonstrated that Martinez-Camacho and two other persons sold the drugs. In particular, Richard Avila testified that he purchased methamphetamine from Martinez-Camacho, a person named "Javier," and another man named "Michona." Trial Tr. at 396–401. According to Avila, these three men—Martinez-Camacho, Michona, and Javier—worked together. Id. at 402. According to another witness, David Suarez, who purchased methamphetamine and marijuana from Martinez-Camacho, Martinez-Camacho and Javier worked together. Id. at 470. Avila also spelled out in detail a methamphetamine transaction on March 8, 2001, involving himself, Martinez-Camacho, and a man named Patrick Powers. On that night, Martinez-Camacho told Avila that methamphetamine had arrived in town and could be purchased that evening. Avila then called Powers and asked if he wanted to do "laundry." In the parking lot outside a Laundromat, Powers grabbed a bag containing methamphetamine from Martinez-Camacho's car. Id. at 407–09. The next day, Omaha police found drugs in Powers's car and apartment. Id. at 119–20. Based on wire taps and visual surveillance, FBI Special Agent Richard Heideman confirmed this sequence of events, id. at 49–50, and also testified that Martinez-Camacho's car frequently appeared at Avila's residence. Id. at 25. In addition, a search of Martinez-Camacho's residence turned up an address book and another notebook containing a list of names with numbers corresponding to methamphetamine prices and quantities.

---

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

Id. at 117, 216–19. Taken as a whole, this evidence establishes Martinez-Camacho's knowledge of the conspiracy as well as his participation in it.

As for the second charge, the Government introduced sufficient evidence to establish that Martinez-Camacho knowingly possessed methamphetamine and intended to distribute it. See United States v. Boyd, 180 F.3d 967, 979 (8th Cir. 1999). Although no witness testified to seeing Martinez-Camacho actually possess methamphetamine, a reasonable jury could have found him to have constructively possessed it. Constructive possession "is established through proof that the individual had 'ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.'" United States v. Ojeda, 23 F.3d 1473, 1475 (8th Cir. 1994) (quoting United States v. Schubel, 912 F.2d 952, 955 (8th Cir. 1990)). A search of an Omaha apartment at which Martinez-Camacho was present uncovered over four hundred grams of methamphetamine hidden in a vacuum cleaner, a night stand, and a pair of shoes. Trial Tr. at 199–205. In addition, Special Agent Heideman testified that Martinez-Camacho made frequent brief visits to this apartment, located fifty-nine blocks from his home. Id. at 32–38. Based on these facts, a reasonable jury could infer that the apartment visits involved his possession of methamphetamine. Evidence of Martinez-Camacho's knowledge of methamphetamine was provided by the testimony of Officer Greg Gonzales concerning a prior attempt by Martinez-Camacho to purchase methamphetamine. See id. at 491; United States v. Jackson, 278 F.3d 769, 771 (8th Cir. 2002). Finally, the jury could have reasonably concluded that Martinez-Camacho's intent was to sell the drugs because the amount of methamphetamine found—over four hundred grams (nearly one pound)—is inconsistent with personal use. See United States v. Hall, 171 F.3d 1133, 1148–49 (8th Cir. 1999) (considering testimony that three and a half grams of methamphetamine was a reasonable amount for personal use and determining that the defendants' possession of a half-pound of the drug was evidence of their intent to distribute), cert. denied, 529 U.S. 1027 (2000).

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-