# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-3070

_____

United States of America,      *
                               *
        Appellee,              *
                               *
    v.                         *
                               *
Adan Mendoza-Larios,           *
also known as Adan Larios Mendoza,  *
                               *
        Appellant.             *

_____

No. 04-3489                    Appeals from the United States
                               District Court for the District
_____                    of South Dakota.

United States of America,      *
                               *
        Appellee,              *
                               *
    v.                         *
                               *
Joaquin Naranjo-Gutierrez,     *
also known as Joaquin Naranjo, *
                               *
        Appellant.             *

_____

Submitted: May 12, 2005
    Filed: July 22, 2005

_____

Before MORRIS SHEPPARD ARNOLD, LAY, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Police seized eight kilograms of cocaine from the car that Joaquin Naranjo-Gutierrez was driving and Adan Mendoza-Larios was riding in. The cocaine was hidden in a compartment welded within the airbag space under the passenger-side dash. Mendoza and Naranjo were convicted by a jury of possession with intent to distribute cocaine, and conspiracy to distribute it. Both attack the sufficiency of the evidence. Having jurisdiction under 28 U.S.C. § 1291, this court reverses.

"A conviction will be reversed on insufficiency grounds only if, after viewing the evidence in the light most favorable to the jury's verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence, no construction of the evidence will support the jury's verdict." *United States v. Lockett*, 393 F.3d 834, 838 (8th Cir. 2005) (internal quotation omitted). The verdict will be upheld unless no reasonable jury could find the defendants guilty. *United States v. Cook*, 356 F.3d 913, 917 (8th Cir. 2004).

Both sides present all-or-nothing cases, turning on whether Mendoza and Naranjo were aware of the cocaine. Knowledge of a large quantity of drugs may prove possession with intent to distribute. *United States v. Shubel*, 912 F.2d 952, 956 (8th Cir. 1990). *See* **21 U.S.C. §§ 841(a)(1)**, **841(b)(1)(A)(ii)(II)**.

This opinion therefore focuses on the evidence of knowledge. Mendoza and Naranjo traveled for hours – each driving at times – in a car containing a large amount of (concealed) cocaine. Gildardo Santos owned the car. Without more, this cannot reasonably infer possession. *See United States v. Pace*, 922 F.2d 451, 452 (8th Cir. 1990) ("While he was certainly caught driving a car full of drugs, he did not

possess them – in the sense of possession that the law recognizes – if he did not know what he had.").

This case is like *Pace*, where the evidence was insufficient to prove a driver knowingly possessed 200 pounds of cocaine concealed in luggage within the vehicle. *Id.* at 452-53. The government cites opinions that distinguish *Pace*. *See United States v. Ojeda*, 23 F.3d 1473, 1475-76 (8th Cir. 1994); *United States v. Cortez*, 935 F.2d 135, 143 (8th Cir. 1991), *cert. denied*, 502 U.S. 1062 (1992).

In *Ojeda*, as in *Pace*, there was "an extended car trip and a large quantity of drugs with a high street value." *Ojeda*, 23 F.3d at 1476 n.3. But unlike *Pace*, other evidence in *Ojeda* supported an inference of possession: "Ojeda's fingerprints were on several of the drug packages"; "The vehicle had a strong odor of pine that likely would lead a naive passenger to question its presence"; "The electronically locked trap doors were opened with pins inserted in Ojeda's visor"; and "Ojeda maintained that he was on the extensive car trip in order to visit a relative for whom he knew no address or telephone number." *Id.* at 1476.

This court upheld the conviction in *Cortez* because, unlike *Pace* and here, the defendant had "complete and sole control and dominion" over a van containing 800 pounds of concealed marijuana. *Cortez*, 935 F.2d at 143. *See also, e.g.*, *United States v. Gaona-Lopez*, 408 F.3d 500, 504-05 (8th Cir. 2005); *United States v. Sanchez*, 252 F.3d 968, 972-73 (8th Cir. 2001). In addition, Cortez provided evasive answers: he said the van was owned by his uncle; the vehicle registration showed that the van was owned by a man with the same address as that listed on Cortez's driver's license; then when asked the name of his uncle, Cortez replied, "I don't know." *Cortez*, 935 F.2d at 137, 143. Cortez explained that his uncle paid him a thousand dollars to drive the van from Texas to Iowa. *Id.* at 137. "Somebody, Cortez was told, would signal him to stop by honking a car's horn and flashing its lights. Whoever stopped him would tell him how he was to return to Texas." *Id.* And, when asked to

cooperate, he responded, "What's in it for me?" *Id.* at 143. The evidence against the defendants in *Ojeda* and *Cortez* is significantly stronger than that here.

After *Ojeda* and *Cortez*, this court reversed for insufficient evidence in *United States v. Fitz*, 317 F.3d 878 (8th Cir. 2003). The evidence supporting conspiracy and possession with intent to distribute included:

> Fitz, Vega, and Preciado traveled from Minneapolis to Grand Forks in a Honda Civic and a Nissan Pathfinder, in which the drugs were hidden; Fitz was observed in the presence of Preciado and Vega in Grand Forks at various locations between 6:00 p.m. and 9:30 p.m.; Fitz gave a false name when he was arrested; and Fitz was present during a recorded conversation between the confidential informant and Preciado in the Burger King parking lot in Grand Forks, in which Preciado said he wanted everything and wanted to return to the motel to discuss the matter. Thereafter, Preciado and Fitz left the parking lot in a Honda Civic . . . .

*Fitz*, 317 F.3d at 882. There was no evidence that Fitz rode in the vehicle containing drugs, but if he did, "the methamphetamine was well hidden in the Pathfinder and there was no evidence in the record that Fitz was aware of the existence of the drugs." *Id.*

Beyond mere presence in a car with illegal drugs, the government contended at trial that Mendoza and Naranjo lied to distance themselves from wrongdoing. *See United States v. Sloan*, 293 F.3d 1066, 1068 (8th Cir. 2002); *Cortez*, 935 F.2d at 137, 143. It points to inconsistencies in their explanations that they innocently drove Santos's car from Seattle to South Dakota en route to pick up Naranjo's cousin (with whom Santos had a relationship in the past) and her children:

1. Mendoza said at roadside that he had known Naranjo for about two years, while Naranjo said he had known Mendoza for three days. At trial, both testified they

were acquaintances because Naranjo sometimes patronized a store Mendoza previously owned.

2. There were discrepancies as to their destination. When first stopped by a state trooper, Naranjo said they were traveling to South Dakota, and Mendoza would know the city. Mendoza said they were going to Minnesota, Naranjo would know the city, and Naranjo had the number to call before they got close. The trooper received a name of a person, but not the number. After an (unfruitful) search and release, the two drove for about 90 miles, where another trooper stopped them. Mendoza told the second trooper they were going to Minnesota, but he did not know the town. Naranjo said they were going somewhere in South Dakota to pick up a friend, and Mendoza would know the town.

At trial, Mendoza testified that before the trip he believed they were traveling to Minneapolis. Naranjo – who had the assistance of an interpreter at trial – testified he had always known they were traveling to Minnesota, but was confused because "the names, they are practically the same, South Dakota and Minnesota." He said that Santos gave them the cousin's number – written on a small piece of paper and placed on the car's shifter lever – to call on arrival in Minnesota. The prosecutor asked: "So if that phone number exists, it must still be in the car?" Naranjo answered: "The truth is, I don't know, but since they were opening doors and closing doors and checking things out along the freeway, I really don't know. And the wind was blowing, so I really don't know." (The video of the first stop, introduced by the government and viewed by the jury, shows windy conditions.)

3. Both defendants testified that Santos recruited them for the trip. Mendoza, however, said he was approached by Santos and Naranjo simultaneously, while Naranjo stated that when he approached Mendoza about going, Mendoza said Santos had already mentioned it to him.

4. As to financial arrangements, Naranjo testified that he had not been offered money to go on the trip. On cross-examination, he said that Santos never offered him any money, and he hoped that Mendoza was going to split the cost of the trip. After cross-examination by Mendoza's counsel, and a recess, Naranjo indicated he and Mendoza were keeping receipts so that Santos could reimburse them. He also said his cousin was to pay some expenses.

In this case, there is less evidence of false exculpatory statements than in *Fitz* and *Pace*. In *Fitz*, the defendant gave a false name when arrested, where in this case both gave correct names when questioned. *See Fitz*, 317 F.3d at 882. The defendant in *Pace* made inconsistent statements about the purpose of the trip, where in this case both consistently said they were going to pick up Naranjo's cousin. *See Pace*, 922 F.2d at 455 (Magill, J., dissenting). Further, the passenger there – who testified that Pace had no knowledge of the cocaine – made false and inconsistent statements. *Id.* at 452; *id.* at 456 (Magill, J., dissenting.). In sum, *Fitz* and *Pace* – both reversals – have more evidence than this case.

The government's authority on inconsistent statements is not persuasive. *Sloan* is a conspiracy case with no issue of knowing drug possession. The evidence was that Sloan was Walker's girlfriend, whom Walker sent to the bus station to pick up Johnson (a drug courier). *Sloan*, 293 F.3d at 1067. Without more, this evidence "would afford an insufficient basis to convict Ms. Sloan of conspiracy to distribute cocaine, because a reasonable mind would necessarily have to entertain a reasonable doubt as to whether Ms. Sloan was aware of Mr. Johnson's mission or that he was involved in a conspiracy." *Id.* at 1068. More evidence, however, supported the verdict: after arrest, Sloan denied knowing Johnson's name, but police found a piece of paper with his name and address in his handwriting in her purse; and Sloan was previously convicted for illegal possession of a weapon while Walker was present. *Id.* at 1068-69. In that case, "a jury could conclude beyond a reasonable doubt, based on the note, that Ms. Sloan knew Mr. Johnson's name before she went to the bus

station to pick him up, and that her denying that she did showed that she knew enough about his drug trafficking to want to hide her familiarity with him." *Id.* at 1068. None of the inconsistencies here is as significant.

Finally, there are other bits of evidence in this case: an asp, or collapsible baton, and an air-freshener were under the back seat; an unopened box of latex gloves was in the trunk; and Mendoza had about $600 (he said from his paycheck). There were pieces of electrical wires on the floor, the airbag lid was unusually hard, and the glove box "did not latch securely. The left side hung down approximately quarter inch, half inch." However, after searching the vehicle for much of the hour-and-forty-five-minute (first) stop – including multiple drug-dog visits – the first trooper could not tell that there was a concealed compartment. He testified that the problems with the passenger-side dash were not obvious to a general member of the public, and that, from outward appearances, the dash looked like any other dash. *Compare **United States v. Johnson***, 18 F.3d 641, 647 (8th Cir. 1994). The government did not analyze the cocaine packages for fingerprints (although requested by the first trooper). The first trooper testified repeatedly that both defendants were cooperative, not nervous, and acted like normal motorists. *Compare **United States v. Butler***, 238 F.3d 1001, 1004 (8th Cir. 2001); ***United States v. Martinez***, 168 F.3d 1043, 1048 (8th Cir. 1999). These facts, in total, add up to little.

There is thus insufficient evidence of possession with intent to distribute. On the evidence presented in this case, therefore, the conspiracy-to-distribute verdicts cannot stand. To convict for conspiracy, "the government must prove beyond a reasonable doubt (1) the existence of an agreement to achieve some illegal purpose; (2) the defendant's knowledge of the agreement; and (3) the defendant's knowing participation in the conspiracy." ***United States v. Cruz***, 285 F.3d 692, 700 (8th Cir. 2002). *See* **21 U.S.C. §§ 841(a)(1)**, **841(b)(1)(A)(ii)(II)**, **846**. Without knowledge of illegal drugs, the government cannot prove at least two of the elements: that

Mendoza or Naranjo was aware of a conspiracy, or that either knowingly participated in it.  *See **Fitz***, 317 F.3d at 883.

A reasonable jury must have a reasonable doubt as to the awareness of the cocaine by Adan Mendoza-Larios and Joaquin Naranjo-Gutierrez.  The convictions are reversed.

———————————————————